IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SIMON CAMPBELL, and PENNSYLVANIANS FOR UNION REFORM,**<br>　　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**PENNSYLVANIA SCHOOL BOARDS ASSOCIATION,**<br>**MICHAEL FACCINETTO,**<br>**DAVID HUTCHINSON,**<br>**OTTO W. VOIT, III,**<br>**KATHY SWOPE,**<br>**LAWRENCE FEINBERG,**<br>**ERIC WOLFGANG,**<br>**DANIEL O'KEEFE,**<br>**DARRYL SCHAFER,**<br>**THOMAS KEREK, and**<br>**LYNN FOLTZ, in their individual capacities,**<br>　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  18-892** |

**DuBois, J.**                                                                                                                               **June 19, 2018**

**M E M O R A N D U M**

## I.     INTRODUCTION

In this suit arising under 42 U.S.C. § 1983, plaintiffs allege that a tort suit filed by defendants in Pennsylvania state court retaliates against plaintiffs' exercise of their First Amendment rights of free expression and to petition the government.  Presently before the Court is defendants' Motion[s] to Dismiss Complaint and/or Strike Impertinent and Scandalous Language ("Motions").  The Court concludes that plaintiff's Verified Complaint states claims against defendants under § 1983 for First Amendment retaliation and that nothing in that Complaint warrants striking.  Accordingly, defendants' Motions are denied.

## II.     BACKGROUND

The facts below are drawn from plaintiffs' Verified Complaint.  The Court construes that complaint in the light most favorable to plaintiffs, as it must in a motion to dismiss.  The facts set forth in the Verified Complaint may be summarized as follows:

Plaintiffs Simon Campbell and Pennsylvanians for Union Reform ("PFUR") are, respectively, a political activist and a non-profit "affiliated" with Campbell.  Verif. Compl. ¶ 2.  Defendants are the Pennsylvania School Boards Association ("PSBA") and the ten voting members of PSBA's Governing Board ("individual defendants"), all of whom were elected school board officials at all times relevant to this case.  *Id.* ¶ 4.

"Nominally organized as a not-for-profit corporation," PSBA is a voluntary association of Pennsylvania's public school districts and "other statutorily-created public education entities," each of which is represented in the PSBA by its respective school board members.  Verif. Compl. ¶¶ 4, 64, 75, 77-78.  Each school board votes as a bloc on issues before the PSBA, including the election of the members of PSBA's Governing Board, all of whom are required by PSBA's bylaws "to be elected government officials of one of PSBA's government entity members."  *Id.* ¶¶ 76, 78.  PSBA provides its members with a variety of services including, but not limited to, "training for new school directors," "development of school policies" and administrative regulations, assistance in hiring school leadership, legislative advocacy, and "represent[ing] its government entity members' legal interests in court proceedings."  *Id.* ¶ 83.

This case centers on "petitioning activities," Verif. Compl. ¶ 3, by plaintiffs related to the PSBA.  In March 2017, Campbell and PFUR sent a request under Pennsylvania's Right to Know Law ("RTKL request"), 65 Pa. Cons. Stat. §§ 701-16, to most public schools in Pennsylvania,

including those that have elected not to join PSBA.[1]  *Id.* ¶¶ 31-32.  In May 2017, plaintiffs submitted a second RTKL request to PSBA's member school districts for information regarding PSBA's use of funding it receives from its member school districts.  *Id.* ¶ 36.  Upon learning of plaintiffs' RTKL requests, PSBA attorneys advised its member school districts to require plaintiffs to travel to each district to collect the requested documents.  *Id.* ¶ 32.

After Campbell learned that PSBA was instructing its members to require him to travel to each school district to collect the requested documents, he posted an image "lampoon[ing]" PSBA's Executive Director, Nathan Mains, to a website he maintained with "criticism directed at PSBA."  Verif. Compl. ¶ 39.  That image depicted Mains as stating, "Now **** off, and drive to the school district if you want public records."  *Id.* ¶ 50 (alteration in original).  Campbell later replaced Mains's image with PSBA's logo, but with similar text, after he received a cease and desist letter from PSBA's outside counsel, Michael Levin.[2]  *Id.* ¶¶ 39-41.  Campbell also sent emails regarding his RTKL requests directly to school districts, in which he "lobbied" the districts "to terminate the taxpayers' forced relationship with PSBA."  *Id.* ¶ 38.

Based on the above conduct, PSBA's Governing Board, whose voting members are the individual defendants in this case, voted on July 17, 2017, to file a suit against Campbell and PFUR in the Court of Common Pleas of Cumberland County ("state suit").  Verif. Compl. ¶¶ 44-46.  The state suit set forth claims for defamation, abuse of process, and tortious interference with contract.  *Id.* ¶¶49-52.  In an email "blast" to PSBA's member school districts announcing the suit, PSBA Executive Directors Mains described the suit as defending PSBA's reputation and the "contractual relationship [between] PSBA and its members."  *Id.* ¶ 54.

---

[1] The Verified Complaint does not disclose the contents of this request.
[2] Levin represents the defendants in this case as well.

Plaintiffs filed suit in this Court on February 28, 2018, alleging that PSBA's state suit, as well as the announcement of that suit, the issuance of a litigation hold notice, and subsequent amendments to its state complaint were in retaliation for plaintiffs' exercise of their First Amendment rights of free expression and to petition the government for redress. *Id.* ¶¶ 53-59. Plaintiff's Verified Complaint states two counts of First Amendment retaliation under 42 U.S.C. § 1983, the first for injunctive relief and the second for compensatory and punitive damages. On April 27, 2018, defendants filed the Motion[s] to Dismiss and/or Strike pending before the Court. Defendants' Motions are ripe for decision.

### III.   LEGAL STANDARD

#### A.   Motion to Dismiss

"The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 674 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiffs must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. In assessing the plausibility of the plaintiffs' claims, a district court first identifies those allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007). Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiffs' complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* In assessing the "nub" of the complaint, the Court

"accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

### B.     Motion to Strike

Defendants have also moved to strike language in the Verified Complaint pursuant to Federal Rule of Civil Procedure 12(f).  Rule 12(f) provides a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Because of the drastic nature of the remedy . . . motions to strike are usually viewed with disfavor and will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002).  The moving party bears the burden on a motion to strike, and "[p]leadings will not be stricken absent clear immateriality or prejudice to the moving party." *Berke v. Presstek, Inc.*, 188 F.R.D. 179, 180 (D.N.H. 1998).  "Any doubt as to the striking of matter in a pleading should be resolved in favor of the pleading." *Hanley v. Volpe*, 305 F. Supp. 977, 980 (E.D. Wis. 1969).

### C.     First Amendment Retaliation Claims Under § 1983

Plaintiffs' Verified Complaint sets forth two claims for First Amendment retaliation under 42 U.S.C. § 1983.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983; *accord Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  By the terms of § 1983, "two—and only two—allegations are required in order to state a cause of action under that statute.  First, the

plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Plaintiffs allege they were deprived of a federal right when defendants retaliated against them for exercising their First Amendment rights. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). In addition to the above elements, a First Amendment claim requires the defendant to be a state actor, which satisfies the requirement under § 1983 that the defendant act under color of state law. *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 930 n.2 (2001). It is under this law that the Court considers defendants' Motions.

## IV. DISCUSSION – MOTION TO DISMISS

In their Motion to Dismiss, defendants raise five arguments: (1) defendants were not state actors for purposes of plaintiffs' First Amendment claims; (2) defendants are immune from liability under the *Noerr-Pennington* doctrine; (3) the individual defendants are entitled to qualified immunity; (4) the Court should abstain from deciding the case under the *Younger* abstention doctrine; and, (5) as a governmental entity, PSBA is not liable for punitive damages.

### A. State Action

Because it is a required element of plaintiffs' claims, the Court first considers defendants' argument that neither PSBA nor its individual board members were state actors for purposes of plaintiffs' First Amendment claims. A private entity may be shown to be a state actor under a

6

variety of tests, including where the entity acts with the "coercive power" of the state, the state provides the private entity with "significant encouragement, either overt or covert," the private entity operates as a "willful participant in joint activity with the State or its agents," or the private entity is "entwined" with governmental policies or control. *Brentwood Acad.*, 531 U.S. at 296 (citations omitted). "Under any test, '[t]he inquiry is fact-specific'" and "labels are not dispositive." *Kach v. Hose,* 589 F.3d 626, 646, 649 n.22 (3d Cir. 2009) (alteration in original) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)).

Defendants argue that they are not state actors, because their state suit "is not a government function" and PSBA is not under the "control of the state." Doc. No. 16-1 at 24, 30. In response, plaintiffs contend that defendants are state actors under the "entwinement" standard applied by the Supreme Court in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. at 295. Doc. No. 19 at 3. For the reasons stated below, the Court agrees with plaintiffs.

In *Brentwood*, the Supreme Court concluded that a state athletic association of public and private high schools acted under color of state law because the "private character of the Association [was] overborne by the pervasive entwinement of public institutions and public officials in its composition and workings." 531 U.S. at 298. The Supreme Court reached that conclusion because 84% of the Association's members were public schools, each school was entitled to vote for the members of the Association's governing board, and the Association's governance of "[i]nterscholastic athletics obviously play[ed] an integral part in the public education of Tennessee." *Id.* at 299-300.

The same analysis applies in this case. Although PSBA is a private entity, its membership is composed entirely of public schools represented by their school board officials.

7

As in *Brentwood*, those schools vote for the members of the PSBA's Governing Board, each of whom must also serve as an elected school board official.  Furthermore, the PSBA, at the direction of its board, provides key services to its public school members, including legal advice, lobbying of the state legislature, and the filing of the state suit at issue in this case.  Taking the allegations of the Verified Complaint as true, the Court concludes, pursuant to *Brentwood,* that defendants are state actors for purposes of plaintiffs' First Amendment claims.

### B.  *Noerr-Pennington* Doctrine

#### 1.  Applicable Law

Defendants also argue that the Verified Complaint must be dismissed under the *Noerr-Pennington* doctrine.  The *Noerr-Pennington* doctrine[3] "immunizes petitioning directed at any branch of government, including the executive, legislative, judicial, and administrative agencies."  *Mariana v. Fisher*, 338 F.3d 189, 199 (3d Cir. 2003) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).  Although the doctrine originally developed in the antitrust context, the Third Circuit and the other Courts of Appeals have expanded the doctrine to generally protect citizens' petitioning activities.  *WE, Inc. v. City of Philadelphia*, 174 F.3d 322, 326 (3d Cir. 1999).

Under the doctrine, petitioning is protected unless it can be shown to be a "sham" under a two-prong test:  first, the activity must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; second, the petitioning must be subjectively baseless in that it "conceals" the "use [of] the governmental process—as opposed to the outcome of that process—as a[] . . . weapon."  *Professional Real Estate Investors, Inc. v.*

---

[3] The doctrine is named from the cases in which it was first promulgated, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

*Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993)) [hereinafter, *PREI*]. Once defendants show that their activity is protected by the First Amendment, plaintiffs bear the burden of proving that defendants' petitioning was a sham. *Id.* at 61.

2. *Analysis*

In response to defendants' argument that the state suit is protected by the *Noerr-Pennington* doctrine, plaintiffs contend that (1) "*Noerr-Pennington* does not protect state actors" such as PSBA; (2) application of the *Noerr-Pennington* doctrine is inappropriate on a motion to dismiss; and (3) the Court cannot conclude, based on the allegations in the Verified Complaint, that defendants' state suit is not a "sham."

Plaintiffs' first two arguments are unavailing. First, the Third Circuit has expressly held that governmental entities may raise the *Noerr-Pennington* doctrine as a defense for their own petitioning of other governmental entities. *Mariana v. Fisher*, 338 F.3d 189, 200 (3d Cir. 2003). Second, the Courts of Appeals have affirmed grants of motions to dismiss under the *Noerr-Pennington* doctrine. *See Mariana*, 338 F.3d at 206; *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1901 (9th Cir. 2000). District courts in this Circuit have concluded that a case may be dismissed pursuant to the *Noerr-Pennington* doctrine so long as the "court can determine, taking all allegations as true, that the plaintiff is not entitled to relief as a matter of law." *Trs. of the Univ. of Pa. v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 242 (E.D. Pa. 2013) (Dalzell, J.).

Finally, under that standard, plaintiffs argue that the allegations in the Verified Complaint are sufficient to survive dismissal. The Verified Complaint alleges that defendants' state suit is in retaliation for plaintiffs' protected First Amendment petitioning and free speech activities. Plaintiffs argue that defendants' state suit thus has no objective basis unless defendants show that

plaintiffs' activities were outside the scope of the protection of the First Amendment, which they cannot do based on the allegations in the Verified Complaint. *See* Doc. No. 19 at 15-16, 20, 22-23.

The Court agrees with plaintiffs on this issue. The *Noerr-Pennington* doctrine protects not only defendants' filing of the state suit, but also plaintiffs' petitioning and free speech activities challenged in that suit. Consequently, whether the state suit has an objective basis hinges on defendants' ability to establish in that suit that plaintiffs' petitioning was a sham, *PREI*, 508 U.S. at 60-61, or that their free expression was actionable defamation, *Hustler Magazine v. Falwell*, 485 U.S. 46, 57 (1988). The Court cannot conclude that, based on the allegations in the Verified Complaint, plaintiffs' activities were a sham or actionable defamation. Thus, defendants' Motion to Dismiss is denied with respect to this argument.[4]

The Court need not reach plaintiffs' additional arguments raised in opposition to defendants' Motion to Dismiss. Plaintiffs contend, *inter alia*, that an RTKL request is not a judicial process that may be subject to an abuse of process claim and that, as a governmental entity, PSBA is precluded from bringing a defamation claim. Doc. No. 19 at 18-19; Doc. No. 24 at 9 (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 291 (1964); *College Sav. Bank v. Florida Prepaid Postsecondary Educ.*, 919 F. Supp. 756, 761 (D.N.J. 1996)). Because of the applicability of the *Noerr-Pennington* doctrine, the Court need not reach these additional arguments.

---

[4] The Court also concludes that, taking the allegations in the light most favorable to plaintiffs, the Verified Complaint sufficiently alleges that the state suit was filed to use "the governmental process—as opposed to the outcome of that process—as a[] . . . weapon" and thus is subjectively baseless. *PREI*, 508 U.S. at 60-61.

### C. Qualified Immunity for the Individual Defendants

Defendants next argue that if the individual board members are state actors, they are immunized from suit by the doctrine of qualified immunity. The doctrine of qualified immunity provides that government officials are immune from suits for civil damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining whether the defendants are entitled to qualified immunity is a two-step inquiry, which may be conducted in either order. *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). The first step of the inquiry is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; the second is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (internal citations omitted). A right may be clearly established even if there is no "previous precedent directly in point," and the ultimate inquiry is whether "a reasonable official would have known that the conduct was unlawful." *Leveto v. Lapina*, 258 F.3d 156, 162 (3d Cir. 2001). A defense of qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Id.* at 161 (internal quotations and citations omitted).

In response to defendants' contentions, plaintiffs argue that the Courts of Appeals have clearly established that the First Amendment precludes government officials from filing suits premised on a citizen's petitioning of the government. *E.g.*, *Cate v. Oldham*, 707 F.2d 1176, 1187 (11th Cir. 1983); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1343 (7th Cir. 1977). The Court agrees with plaintiffs that these cases are sufficient to clearly establish that state officials may not sue a citizen based on the citizen's petitioning of the government. In the Verified Complaint, plaintiffs aver that the individual defendants, who held their positions on

11

PSBA's Governing Board by virtue of their status as state officials did exactly that, voting to file the state suit in response to plaintiffs' petitioning of the government by filing the RTKL requests and lobbying school districts to sever ties with the PSBA.  Taking these allegations as true—as it must—the Court concludes that the Verified Complaint sufficiently alleges the violation of a clearly established constitutional right and that defendants are not entitled to qualified immunity at this stage of the proceedings.

### D. *Younger* Abstention

Defendants next argue that the Court should dismiss the Verified Complaint under the *Younger* abstention doctrine.[5]  Under *Younger* abstention, a federal court should "decline to enjoin a pending state court [proceeding] absent a showing that the charges had been brought in bad faith or with an intent to harass."  *Acra Turf Club, Ltd. Liab. Co. v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014).  Defendants contend that, under Third Circuit precedent applying the *Younger* abstention doctrine, they are entitled to dismissal because there is an "ongoing state proceeding[]" implicating "important state interests" that "afford[s] an adequate opportunity to raise federal claims."  *Anthony v. Gerald Council*, 316 F.3d 412, 418 (3d Cir. 2003) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass*'n, 457 U.S. 423, 435 (1982)).

In response, plaintiffs argue that the Supreme Court decision *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), forecloses defendants' argument.  The Court agrees with plaintiffs.  In *Sprint*, the Supreme Court held that *Younger* abstention applies only to three types of state proceedings: (1) "ongoing state criminal prosecutions" (2) "certain 'civil enforcement proceedings,'" and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  571 U.S. at 78 (internal citations

---

[5] The doctrine is named from the Supreme Court decision *Younger v. Harris*, 401 U.S. 37 (1971), in which it was first announced.

omitted). "After *Sprint*, the threshold requirement for applying *Younger* abstention is that the state civil enforcement proceeding must be 'quasi-criminal' in nature." *Acra*, 748 F.3d at 132. Defendants' state claims ring in tort and are not "quasi-criminal" in nature. *Accord Cate*, 707 F.2d at 1184 (holding that claim for malicious prosecution was not a "quasi-criminal" suit entitled to *Younger* abstention). Thus, *Younger* abstention is inapplicable to this case.

### E. Punitive Damages Against the PSBA

In their penultimate argument, defendants contend that if PSBA is a "government agency," it cannot be held liable for punitive damages. It is well established that punitive damages may be imposed under § 1983 for a defendant's "reckless or callous disregard for the plaintiff's rights." *Smith v. Wade*, 461 U.S. 30, 51 (1983). Punitive damages, however, may not be imposed on municipalities, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981), or other government agencies, *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 830 (3d Cir. 1991), even with a showing of reckless disregard. Plaintiffs concede that *if* PSBA is a government agency, it may not be subject to the imposition of punitive damages, but argue that they may recover punitive damages from PSBA as "a willful [private] participant in joint activity with the State or its agents," as opposed to an agency of the state. For the reasons stated below, the Court concludes the PSBA is not immune from the imposition of punitive damages.

The parties' contentions present the question whether punitive damages may be imposed on a private entity held to be a state actor for purposes of a claim under § 1983.[6] Courts that have considered that question have concluded that punitive damages may be imposed on private entities under § 1983. *See* BARBARA KRITCHEVSKY, *Civil Rights Liability of Private Entities*, 26

---

[6] The cases cited by defendants with regard to this argument, *Feingold v. SEPTA*, 517 A.2d 1270, 1276 (Pa. 1986), and *Doe v. Cty. of Ctr.*, 242 F.3d 437, 457 (3d Cir. 2001), address only the imposition of punitive damages on government agencies, rather than private entities, and are inapplicable to this case.

CARDOZO L. REV. 35, 69 (2005) (collecting cases).  For example, in *Segler v. Clark County*, 142 F. Supp. 2d 1264, 1268 (D. Nev. 2001), the court concluded that Emergency Medical Service Associates ("EMSA"), a private corporation contracted to provide medical care to inmates in Nevada prisons, could be subject to the imposition of punitive damages.  In reaching that decision, the court first concluded that EMSA "qualifie[d] as a state actor who may be liable under § 1983" because it was "fully vested with state authority to fulfill essential aspects of the duty, place[d] on the State by the Eighth Amendment . . . to provide essential medical care to those the State had incarcerated."  *Id.* at 1268 (omission in original) (quoting *West v. Atkins*, 487 U.S. 42, 56-57 (1988)).  However, notwithstanding the status of EMSA as a "state actor," the *Segler* court ruled EMSA was not immune from the imposition of punitive damages because it remained a private corporation, reasoning as follows:

> Although EMSA is a state actor through its contract with [the state], the award of punitive damages against EMSA would not punish taxpayers in the way such a decision would affect a municipality.  Instead, punitive damages would be assessed against EMSA which would bear the burden of payment as a private corporation.  Also, the deterrence effect of an award of punitive damages would impact EMSA as a private corporation influencing the possible future actions by EMSA or its employees.

*Id.* at 1269 (citing *Newport*, 453 U.S. at 266-68); *accord Campbell v. Philadelphia*, No. 88-cv-6976, 1990 U.S. Dist. LEXIS 8950, at *20 (E.D. Pa. July 13, 1990).

The conclusion in these cases that private entities may be subject to the imposition of punitive damages is supported by the Supreme Court decision in *Newport v. Fact Concerts, Inc.*  In *Newport*, the Supreme Court concluded that punitive damages may not be imposed on a municipality.  453 U.S. at 271.  In reaching that conclusion, the Court reasoned that, unlike private entities, municipalities were exempt at common law from the imposition of punitive damages.  *Id.* at 259.  The *Newport* court also reasoned that, unlike punitive damages imposed on a private entity, the "award of punitive damages against a municipality 'punishes' only the

14

taxpayers" and would have little deterrent effect on misbehavior by government officials. *Id.* at 267-70.  This Court concludes that the decision of the Supreme Court in *Newport* that municipalities are immune from punitive damages relies on characteristics unique to municipalities and is inapplicable to private entities such as PSBA.

Because the Supreme Court decision in *Newport* makes the distinction between municipalities and private entities clear, this Court concludes that punitive damages may be imposed on a private entity under § 1983.  Thus, defendants' Motion to Dismiss is denied with respect to the imposition of punitive damages on PSBA.

## V.     DISCUSSION – MOTION TO STRIKE

Finally, with respect to the Motion to Strike, defendants argue that the references in the Verified Complaint to the state suit filed against Campbell and PFUR as a "SLAPP suit" should be stricken under Federal Rule of Civil Procedure Rule 12(f) as an "attempt to improperly characterize the state court litigation."  The term "SLAPP suit" stands for "strategic lawsuit against public participation" and is used in some state laws that seek to prevent frivolous lawsuits aimed solely at chilling the exercise of certain First Amendment rights.  *Prudential Ins. Co. of Am. v. Massaro*, No. 97-2022, 2003 U.S. Dist. LEXIS 28799, at *11 (D.N.J. May 20, 2003).  Plaintiffs respond that they "have not called the PSBA lawsuit a 'SLAPP Suit' to blacken PSBA's name" but because "their claims hinge on their allegation that PSBA's tort suit against them is frivolous, and designed solely to chill their speech and punish them with the litigation process."  According to plaintiffs, the term is shorthand for "the basis of [their] legal theory."

The Court concludes that the Motion to Strike is denied.  As noted above, Rule 12(f) provides a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Because of the drastic nature of the remedy . . .

motions to strike are usually viewed with disfavor and will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002). The moving party bears the burden on a motion to strike, and "[p]leadings will not be stricken absent clear immateriality or prejudice to the moving party." *Berke v. Presstek, Inc.*, 188 F.R.D. 179, 180 (D.N.H. 1998). "Any doubt as to the striking of matter in a pleading should be resolved in favor of the pleading." *Hanley v. Volpe*, 305 F. Supp. 977, 980 (E.D. Wis. 1969).

Defendants have failed to aver that they will be prejudiced by references to the state suit as a "SLAPP suit" or that those references have "no possible relation to the controversy." Thus, the Motion to Strike is denied.

### VI. CONCLUSION

For the foregoing reasons, defendants' Motion[s] to Dismiss Complaint and/or Strike Impertinent and Scandalous Language are denied without prejudice to defendants' right to renew the arguments raised in the Motions by motion for summary judgment or at trial, if warranted by the facts and applicable law as stated in this Memorandum. An appropriate order follows.