# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SIMON CAMPBELL and PENNSYLVANIANS FOR UNION REFORM, | : | |
| *Plaintiffs*, | : | No. 2:18-CV-892-JD |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA SCHOOL BOARDS ASSOCIATION, MICHAEL FACCINETTO, DAVID HUTCHINSON, OTTO W. VOIT III, KATHY SWOPE, LAWRENCE FEINBERG, ERIC WOLFGANG, DANIEL O'KEEFE, DARRYL SCHAFER, THOMAS KEREK, and LYNN FOLTZ, | : | |
| *Defendants*. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO SANCTION COUNSEL FOR PLAINTIFFS FOR VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT

Michael I. Levin (PA 21232)
David W. Brown (PA 201553)
Craig D. Ginsburg (PA 56445)
LEVIN LEGAL GROUP, P.C.
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
Phone: (215) 938-6378
mlevin@levinlegalgroup.com
dbrown@levinlegalgroup.com
cginsburg@levinlegalgroup.com
*Attorneys for Defendants*

## I.   INTRODUCTION

Defendants, Pennsylvania School Boards Association ("PSBA") and Michael Faccinetto, David Hutchinson, Otto W. Voit, III, Kathy Swope, Lawrence Feinberg, Eric Wolfgang, Daniel O'Keefe, Darryl Schafer, Thomas Kerek, and Lynn Foltz (the "Individual Defendants"), through their counsel, the Levin Legal Group, P.C., hereby submit this Memorandum of Law, and Opinion Letter of legal ethics expert, Robert H. Davis, Jr. Esquire ("Davis")(Exhibit D-165)[1], in support of their Motion to Sanction Plaintiffs' Counsel for Violations of the Rules of Professional Conduct.

## II.   BASIS FOR THE MOTION

This Motion has been necessitated by a course of improper and unethical conduct on the part of Plaintiffs' counsel Jacob Cohn, Esquire in which he attacks and attempts to undermine the attorney-client relationship between the Individual and corporate Defendants and the various counsel of record representing them in this action and underlying related actions.  Cohn did so, in part, by using email as a subterfuge to improperly communicate with Individual Defendants to make baseless threats of legal action against them and the local school boards they serve

---

[1] The Opinion Letter sets out the bases of Mr. Davis's opinion that Cohn and his firm violated the Rules of Professional Conduct.  Mr. Davis's CV is in Exhibit D-165 behind the opinion letter and details Mr. Davis's extensive experience in the field of legal ethics.

on, and to otherwise disparage their counsel of record and the quality of the representation they were getting. All of this was done with the obvious goals of influencing these Defendants' decision-making about the litigation itself, to sow distrust between them and their counsel of record, and, in the case of the corporate defendant PSBA, to attempt to alter the makeup of the Defendant's own corporate board of directors. Cohn amplified these attacks by using irrelevant deposition questioning of Individual Defendants to disparage the attorneys representing them in various aspects of the litigation, again impugning the quality of the representation and advice they were receiving and suggesting that counsel were failing to inform them of important matters.

This conduct is demonstrated in: (1) a set of emails that Cohn sent to a group of School District Solicitors ("the Solicitor Emails"); (2) deposition questions in which Cohn attacks the quality of the legal representation Defendants are receiving in this case; and (3) deposition questions to a number of witnesses in which Cohn suggests to Defendants and that the Court has an unfavorable opinion of Bochetto and Lentz and that the Bochetto firm is unethical.  ("the Bochetto & Lentz Questions.").[2]

---

[2] We wish to note that Attorney Mary Catherine Roper played no role in the Solicitor emails or the objectionable questioning by Cohn.  Cohn did not copy Roper on the emails, as he did not copy counsel for the Defendants on the emails that he sent to the solicitors.

In the Solicitor Emails, Cohn threatens to sue the School Districts whose Board members are potential witnesses in this case, and Cohn disparages counsel for Defendants, Michael I. Levin, as driving a "crazy train" and being professionally inept.  In another email to third-parties, Cohn referred to another defense counsel, Susan Wiener ("Weiner"),[3] as "clueless."  Copies of Cohn's emails are attached to this Memorandum of Law.

In deposition questions of PSBA Board members in this case, Cohn suggested that Defense counsel are not providing Defendants proper representation contending, for example, that counsel have conflicts of interest, did not properly accept of service of the Complaint, and failed to inform Defendants of Plaintiffs' settlement overtures.  (Voit Depo., pp. 47-58, Exhibit D-88; Schafer Depo., pp. 80-100, Exhibit D-166).  Cohn also used the deposition questioning of PSBA Board members as an opportunity to disparage PSBA's counsel in the State Tort Action, Bochetto & Lentz ("B&L"), and to imply that the Court agrees with that view.

In his questioning of Defendant, Kathy Swope, referring to Bochetto & Lentz, Cohn asked: "Nobody ever told you about their nasty reputation?"  (Swope Dep. p. 35, Exhibit D-87).  In his questioning of Defendant Faccinetto, Cohn asked the following questions regarding B&L:

---

[3] Wiener entered her appearance in this matter on behalf of Defendant Michael Faccinetto ("Faccinetto") on May 29, 2018.  Wiener was retained by an insurance carrier under a personal insurance policy that Faccinetto had.

Q. Do you know anything about Bochetto & Lentz's reputation for legal scholarship?

MR. BROWN: Objection.

THE WITNESS: I do not, no.

BY MR. COHN:

Q. Do you know anything about Bochetto & Lentz's reputation as bullies?

MR. BROWN: Objection.

THE WITNESS: I do not.

BY MR. COHN:

*Q. Anybody tell you what the judge's reaction was when it was mentioned that Bochetto & Lentz was counsel in the underlying action?*

MR. BROWN: Objection.

THE WITNESS: I don't recall if they did.

BY MR. COHN:

Q. Do you remember anybody telling you about the Christmas card that the judge recalled receiving one year from Bochetto & Lentz with an AK 47 on the front cover of it?

MR. BROWN: Objection to relevance.

THE WITNESS: Did not.

BY MR. COHN:

Q. Was it the intention of PSBA in retaining Bochetto & Lentz to hire an aggressive law firm to really teach Simon Campbell a lesson?

MR. BROWN: Objection.

(Faccinetto Dep. pp. 154-155, Exhibit D-69)(emphasis added).

## III.    FACTS

### A.    The PSBA.

The PSBA is a voluntary nonprofit corporation and membership association. Membership in PSBA is generally limited to Public School Entities[4] ("Entity Members") and the individual School Directors[5] ("Individual Members") who are on the School Boards of Member Entities.  No individual School Board director can be a member of PSBA if the Public School Entity on which he/she serves is not a member of PSBA.[6]  The rights of PSBA Member Entities regarding PSBA

---

[4] The Public School Entities that are members of PSBA include and are limited to school districts, Intermediate Units, public vocational-technical schools and community colleges.  The total universe of Public School Entities eligible for membership in PSBA are approximately 500 school districts, 29 intermediate units, 80 public vocational-technical schools and 14 community colleges, for a total of about 623 Public School Entities. *See,* PA Dept. of Ed. Website, Tab for Schools/Sub-Tab for Types of Schools.  Of that potential universe, approximately 598 Public School Entities are currently members of PSBA.  Membership is totally voluntary. Public charter schools are not eligible for membership in PSBA.

[5] As used in this Memorandum, the phrase "School Director(s)" means members of the boards of school directors of Public School Entities.

[6] There is a limited exception with respect to the President, and Immediate Past President.  Article IV, Section 4 of the Bylaws (Exhibit D-36) provides:  "Any individual member under Article I, Section 2, subsections A and B, is eligible to hold an office or other elected position in the Association, so long as membership status continues; provided, however, that a person who was a member when elected president or who stood to assume the presidency by virtue of having been elected president-elect in accordance with this Article, and has served as president-elect shall be entitled to serve the full term of the president regardless of the fact

matters are limited as set forth in Pennsylvania's Non-profit Corporation Code, 15 Pa.C.S.A. §5501, *et seq.,* and PSBA's Bylaws.

As relevant to this matter, nothing in PSBA's Bylaws gives PSBA members a right or voice with respect to determining when and who PSBA will sue. PSBA members have no right to control or otherwise participate in decisions about litigation brought by PSBA. Consequently, PSBA members have no right to require withdrawal of cases brought by PSBA.

Members of PSBA who are not on the Governing Board or officers have limited rights through their membership and no authority to cause PSBA to take any action or to take any action on PSBA's behalf. Public School Entities can withdraw from membership in PSBA at any time.

**B.    The PSBA Governing Board.**

PSBA has a board of directors that is called the "Governing Board." (Bylaws, Article III and Article IV, Section 8, Exhibit D-36). Although the eligibility standards generally require Governing Board members to be school directors, service on the PSBA Governing Board is not part of the individual's service to his or her school district or school board and is totally unrelated to school board services. The duties of PSBA's Board are unrelated to service on a school board. (Faccinetto Declaration, ¶6, Exhibit D-74). Decisions of School

---

that such person may cease to be a member of the board of the entity from which individual membership was derived."

Board members to serve on PSBA's Governing Board are totally private decisions, are voluntary, and are outside of any duties School Board members have as to their respective School Districts.  (Faccinetto Declaration, ¶¶5-16 Exhibit D-74; Freund Declaration, ¶¶9, 11, 23, 24, 32, Exhibit D-70; Russell Declaration, ¶¶27, Exhibit D-71; King Declaration, ¶¶14-15, D-75).  When PSBA Governing Board members act, they owe their fiduciary duties to the PSBA and not to their home school districts and they are not representing their home school districts.  (Faccinetto Declaration, ¶7, Exhibit D-74; Freund Declaration, ¶¶8-9, Exhibit D-70; Russell Declaration, ¶27, Exhibit D-71; King Declaration, ¶7, D-75).  Under Pennsylvania law, directors of non-profit corporations owe their fiduciary duties to the corporation, and not to the school districts on which they serve.  15 Pa.C.S.A. §5712(a) and (b); *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).  When serving for PSBA, the Governing Board members are serving as private citizens, even though they are eligible for such service because they are school board directors.  (Faccinetto Declaration, ¶¶5-6, Exhibit 74).

PSBA Governing Board members serve PSBA on their own time and at their own expense or the expense of PSBA.[7]  (Faccinetto Declaration, ¶¶5, 10, Exhibit

---

[7] PSBA reimburses its Governing Board members for their out-of-pocket travel expenses.  (Faccinetto Declaration, ¶10, Exhibit D-74).  PSBA does not reimburse Governing Board members lost wages if they have to take time off from the "day job," so to speak.  In other words, the PSBA Governing Board members, who are not paid for their service on the PSBA Governing Board, are not compensated for

D-74).  Their decision to serve PSBA and to run for office with PSBA is their own private decision.  (Id.).  No school board can force any of its members to run for office with PSBA or to terminate their service to PSBA.  (Freund Declaration, ¶¶25-26, Exhibit D-70).[8]  When incurring travel expenses related to their service to PSBA, PSBA pays or reimburses them for such expenses, not their school districts. (Faccinetto Declaration, ¶10, Exhibit D-74).  Governing board members are not members of the Public School Employee Retirement System.  (Faccinetto Declaration, ¶12, Exhibit D-74).  When serving on the PSBA Governing Board, these individuals do not take any action that is to control or govern the way in which public school entities operate.  (Freund Declaration, ¶11, Exhibit D-70).  On

their personal time that they devote to PSBA, even if they lose salary from their outside employment.  (Faccinetto Declaration, ¶10, Exhibit D-74).

[8] The Plaintiffs take the position that the home school districts can terminate their membership in the PSBA and thereby terminate the right of the individual school director to serve on the PSBA Governing Board.  The Plaintiffs further take the position that by failing to withdraw from membership in PSBA, the home school districts have "ratified" the actions of the PSBA Governing Board Members. For example, it his May 13, 2018, email to school district solicitors, Cohn said: "It is my clients' position that, by permitting its individual director to continue to serve on the Governing Board of PSBA while PSBA filed, amended, and to this day refuses to dismiss with prejudice its unconstitutional SLAPP Suit, each of your district clients has ratified the prior and continuing conduct of its individual directors acting as PSBA Governing Board directors."  Not only is there no legal precedent supporting these notions, but it is suggested that if a school board were to terminate membership in PSBA for the sole reason of preventing a board member from serving on the PSBA Governing Board, that the school board would be violating the free associational rights of the individual who wants to serve PSBA.

the contrary, the actions by the PSBA Governing Board are related to the business of PSBA.  (Freund Declaration, ¶11, Exhibit D-70).

### C.     Plaintiffs' Complaint and Theory of State Action Alleged Therein

On February 28, 2018, Plaintiffs, Simon Campbell ("Campbell") and Pennsylvanians for Union Reform ("PFUR") (jointly, "Plaintiffs"), filed their Complaint in this case.  Cohn is the lead attorney for Plaintiffs.  (Complaint, p. 28, Exhibit D-91).

The Complaint names the PSBA and ten individuals as Defendants.  Seven of the Individual Defendants are currently on the PSBA Governing Board, and three are former PSBA Governing Board members.  The former PSBA Governing Board members who are being sued were on the PSBA Governing Board when the "State Tort Action" was filed by PSBA.

In their Complaint, Plaintiffs did not name as a defendant any Public School Entity.[9]  (*See generally*, Complaint, Exhibit D-91).  The Complaint alleges that in

---

[9] It is the position of the PSBA that there is no basis for Campbell and PFUR to bring Public School Entities into this suit as they had and have no connection to the acts complained of by the Plaintiffs, other than being members of PSBA.  We are unaware of any legal theory that holds members of voluntary membership associations legally responsible for the actions of the association merely because they are members.  Indeed, as discussed below, the opposite is true.  *See*, 15 Pa.C.S.A. §5553(a)(Non-Profit Corporation Law); *Fraim v. Katz*, 68 Pa. D. & C.2d 567, 574 (Phila. CCP 1975); *In re Mushroom Direct Purchaser Litigation*, 514 F. Supp. 2d 683 n. 13 (E.D. Pa. 2007); *In re Mushroom Direct Purchaser Litigation,* 2008 WL 583906, *3 (E.D. Pa. 2008).

retaliation for Plaintiffs' exercise of their First Amendment rights, which involved, among other things, the service of numerous Right to Know Law requests on the Districts, PSBA filed a state court lawsuit against Plaintiffs for "Defamation, Tortious Interference with Contractual Relations, and Abuse of Process." (Complaint, ¶46, Exhibit D-91)("the State Tort Action").

The Complaint avers that PSBA filed the State Tort Action as a "state actor" and that the filing of the State Tort Action was a "state action." Plaintiffs further assert that each of the "Individual Defendant PSBA Governing Board members, *acting under the color of state law*, voted to cause PSBA to file the "State Tort Action." (Complaint, ¶45, Exhibit D-91)(emphasis added).

Plaintiffs contend that, even if PSBA is not a private actor, state action existed because PSBA Governing Board members approved the state court lawsuit based upon their authority as School Board members. (Complaint, ¶86, Exhibit D-91).[10] The Defendants vigorously disagree with this contention. The approval of the filing of the State Tort Action had nothing to do with their service, duties or authority as School Board members. Service as a School Board member is simply an eligibility criterion for service on the PSBA Governing Board. (Bylaws, Article

---

[10] In Campbell's deposition, Campbell asserted that School Boards have "ratified" the State Tort Action that PSBA filed against Campbell because the School Boards have not cancelled their memberships in PSBA since the lawsuit was filed. Campbell Depo. Trans., p. 177, Exhibit D-90).

I, Section 2, Exhibit D-36).   When serving on the PSBA Governing Board, the individual directors are ***not*** acting "based on their authority as School Board members."   Indeed, under established Pennsylvania law, individual school board directors have no individual power or authority to act for or on behalf of their school districts—they act only collectively as a board member of a Public School Entity at a public meeting in accordance with the School Code and Sunshine Acts. Case law has made it clear that school directors have no individual powers outside of the school board and school board meetings.[11]   Simply stated, no school board

---

[11] *Bangor Area Educ. Ass'n v. Angle*, 720 A.2d 198, 201 (Pa.Cmwlth. 1998), *aff'd*, 561 Pa. 305, 750 A.2d 282 (2000)(individual school board members lacked authority to act unilaterally in reviewing teacher personnel records under guise of carrying out responsibilities of board as whole); *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 479 (E.D. Pa. 2008)(school board president had no individual power or authority and could not waive attorney-client privilege on behalf of school district under Pennsylvania law without approval of board). Explaining that individual school board members, not even the president, have power or authority to act for the school district, the Court in *Sampson* said:

> [t]he law in Pennsylvania is clear that the president of a school board ***lacks the unilateral authority*** to bind the School District to actions such as the making of contracts in the absence of approval by a majority of the board of school directors." (Defs.' Mem. of Law at 9) (*citing Albert Gallatin Area Sch. Dist. v. Penn Transp. Servs., Inc.,* 704 A.2d 184 (Pa.Cmwlth.1997); *Sch. Dist. of Phila. v. Framlau Corp.,* 15 Pa.Cmwlth. 621, 328 A.2d 866 (1974)). Defendants note that the statute on which Plaintiff relies grants the school board president "authority to act on behalf of the School District, but only when authorized by the Board of School Directors in accordance with the law." (Defs.' Mem. of Law at 9.) For example, the school board president *"when directed by the board,* shall execute any and all deeds, contracts, warrants to tax collectors, reports, and other

took any action to authorize or ratify the actions of the individuals serving on the PSBA Governing Board in their private capacities to approve or ratify the PSBA Tort Action. (Faccinetto Declaration, ¶9, Exhibit D-74). Conspicuously absent from the Complaint is any allegation that the board of any Public School Entity voted in favor of the State Tort Action filed against Campbell or had any authority to control whether PSBA sued Plaintiffs in state court. (*See generally*, Complaint, Exhibit D-91).

> **D.** **Attorney Cohn did not Seek Discovery Regarding the School Districts' Alleged Role in the State Tort Action Before Making Litigation Threats Against the Districts for Their Alleged Role in the Action**

In the Solicitor Emails, Cohn made threats to third parties to sue School Districts and their Board members due to their alleged role in the State Tort Action, even though the School Districts had no role. At the time the threats were made, Plaintiffs had not sought through discovery any meaningful information

---

papers...." 24 Pa. Stat. § 4–427 (2008) (emphasis added). "[The school board president] *shall in no case,* except as this section otherwise provides, sign any order for any sum unless the same has first been acted upon and *approved by the board ....*" *Id.* (emphasis added).

*Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 479 (E.D. Pa. 2008)(Emphasis added)

about the Districts and their Board members' purported roles in the State Tort Action.  Further, through the discovery process, Plaintiffs failed to adduce any evidence that any school district had any role in the matters about which the Plaintiffs complain.[12]

### E.    Subjects on which School Board Members are Witnesses

From the beginning of this case, Cohn has known that School Board members may be witnesses in this case.  In the Plaintiffs' Initial Disclosures,

---

[12] In late March and early April 2018, Plaintiffs served upon PSBA their first written discovery requests.  On or about March 29, 2018, Plaintiffs served their First Set of Requests for Production of Documents.  ("First RFP") (Exhibit D-63).  On or about April 2, 2018, Plaintiffs served their First Set of Requests for Admissions ("First RFA") (Exhibit D-65) upon the Defendants.

Combined, the Plaintiffs' First RFA and First RFP contain nearly 300 separate discovery requests.  These discovery requests do not seek in any meaningful way information or records regarding the role of the Public School Entities that Cohn is alleging in his threatening emails.

Depositions in this case began on or about May 22, 2018.  Therefore, no information from depositions existed prior to May 22, 2018.  Since then, depositions of the following people were taken by the Plaintiffs on the following dates: [**cont'd on next page**]

| Witness | Date of Deposition |
| --- | --- |
| Stuart Knade | May 22, 2018 |
| Darryl Schafer | May 23, 2018 |
| Kathy Swope | May 29, 2018 |
| Michael Faccinetto | May 30, 2018 |
| Otto Voit, III | May 30, 2018 |
| Nathan Mains | June 1, 2018 |
| Emily Leader | June 25, 2018 |

Exhibit D-64, that Cohn served on the undersigned, Cohn listed among other potential witnesses the following:

> Representative(s) of PSBA member organizations, including but not limited to, public school districts, community colleges, Intermediate Units, and technical schools, etc.

(Pls' Initial Disclosures, p. 4, Item 18 in a chart, Exhibit D-64).

PSBA agrees with Cohn that School Board members of PSBA Member Entities are and always have been potential witnesses in this case. School Board members may be witnesses on the subjects listed below and possibly others.

1.     The lack of involvement in or control over the State Tort Action;

2.     The lack of communications with Governing Board members about the State Tort Action;

3.     Right to Know Law ("RTKL") Requests Campbell served on Public School Entities;

4.     PSBA's guidance to Public School Entities on responding to Campbell's RTKL Requests;

5.     School District resources needed to respond to Campbell's RTKL requests;

6.     Campbell's communications with the School Districts about the RTKL requests;

7.      Campbell's communications with PSBA officials about the RTKL requests and other matters;

8.      Campbell's legal threats communicated to the School Districts regarding the RTKL requests;

9.      The roles in PSBA of Member Entities;

10.     Reasons for membership in PSBA by PSBA Member Entities;

11.     Decisions of School Districts' Board Members to also serve on PSBA's Governing Board;

12.     Lack of control of School Boards over PSBA; and

13.     Lack of control that Public School Entities exercise over School Board members in their capacities as members of PSBA's Governing Board.

Consequently, when he sent the Solicitor Emails threatening suit, Cohn knew that he was threatening potential witnesses in this case.

### F.      Cohn's Threatening Emails to Solicitors

Beginning on May 13, 2018, Cohn sent the Solicitor Emails in which he threatened to sue a group of School Districts that each had a Board member on PSBA's Governing Board.  In those emails, Cohn pressured these School Districts to cancel their PSBA memberships, and he made disparaging remarks about the professionalism and competence of counsel for PSBA, Levin, and co-counsel for Faccinetto, Susan Weiner.

16

Based upon their duties as counsel, Solicitors transmitted Cohn's emails, and/or informed, the School Districts and their Boards of Directors who have as members the Individual Defendants in this case.   (Freund Affidavit, ¶¶20-21, Exhibit D-70; King Declaration, ¶11, Exhibit D-75).

Remarkably, Cohn did not copy counsel for the Defendants on the Solicitor Emails (Exhibits D-39, 40, 55, 57, 58, 59 and 60).  That was so even though it was, or should have been, clear to Cohn that his emails would be provided to the School Districts' Board members who included Levin's clients, the Individual Defendants in this case.  (Freund Declaration, ¶¶20-21, Exhibit D-70; King Declaration, ¶11, Exhibit D-75).

Moreover, Cohn suggested to the Solicitors that the disclosure of his emails to counsel for Defendants would result in some form punishment to the Solicitors. (Freund Affidavit, ¶¶20-21, Exhibit D-70).

### 1.    The May 13 Email to Solicitors.

On May 13, 2018, Cohn sent an email (Exhibit D-39)("May 13 Email") to ten lawyers who each serve as Solicitors for the school districts for which the Individual Defendants in this case are/were board members.[13]  Cohn threatened to

---

[13] The School Districts identified in the Complaint as having Board members on PSBA's Governing Board are the following: Bethlehem Area School District, State College Area School District, Muhlenberg School District, Lewisburg School District, School District of Haverford Township, Central York School District,

sue the School Districts, and their Boards of Directors, on the basis that the School

Boards have members who also serve on the PSBA Governing Board.    Cohn

called upon the School Districts either to: (1) demand that their Board members

who serve on the PSBA Board cause PSBA to withdraw the State Tort Action; or

(2) cancel the Districts' memberships in PSBA which, in turn, would remove their

Board members from PSBA's Governing Board and prevent the Board members

from further service on PSBA's Board.[14]   Cohn suggested that so long as the

School Districts remain members of PSBA, the Districts were ratifying PSBA's

purportedly unconstitutional State Tort Action against the Plaintiffs, would be sued

on that basis, and had sizable and growing liability for damages.   Cohn's May 13

email states:

> Dear Counsel,
>
> As I expect each of you is already aware, together with the ACLU, I
> am co-counsel for Plaintiffs, Simon Campbell and Pennsylvanians for
> Union Reform, in the Counter-SLAPP Suit, First Amendment
> Retaliation civil rights lawsuit against PSBA and ten of its current and
> former directors pending in the United States District Court for the
> Eastern District of Pennsylvania. ***I am writing to you because I***

---

Northgate School District, Northwestern Lehigh School District, Kane Area School
District, and Wilmington Area School District.

[14] As indicated earlier, it is submitted that a strong argument could be made that if
any District did what Cohn was demanding, then the Districts would be violating
the First Amendment associational rights of the PSBA Governing Board member
affected.

*understand that each of you is the solicitor for one of the home school districts of the ten current voting members of PSBA's governing board, seven of whom also are currently named as individual defendants:*

\*          \*          \*

*I am reaching out to you at this point because there seems to be considerable misunderstanding regarding your respective school district client's legal exposure here, which is substantial and increasing.*[15] Each of the current PSBA Governing Board directors, even the ones who began serving in that capacity in January 2018, after the SLAPP Suit was underway, bears responsibility for its continuation and for PSBA's continued refusal to dismiss the SLAPP Suit with prejudice. *And each of them is "acting under color of state law" because they are cloaked in the mantle of government authority as a director of your client's school boards and, indeed, can serve as PSBA Governing Board Directors solely because each of your district clients maintains government entity membership in PSBA. Further, each PSBA Governing Board director continues to serve in that capacity, and in that capacity to authorize, the continuation of the SLAPP Suit, solely because each home school district continues to permit his or her participation*.

\*          \*          \*

*In any event, each of your school district clients by now has had ample opportunity either to call upon its respective PSBA Governing Board member to cause PSBA to dismiss the SLAPP Suit with*

---

[15] It must be kept in mind that there is no legal or factual support for Cohn's statement.  The law is clear that members of membership corporations like PSBA have not liability simply for being a member.  The Non-profit Corporation Law provides: "A member of a nonprofit corporation shall not be liable, solely by reason of being a member, under an order of a court or in any other manner for a debt, obligation or liability of the corporation of any kind or for the acts of any member or representative of the corporation." 15 Pa.C.S.A. § 5553.  *See also, Fraim v. Katz*, 68 Pa. D. & C.2d 567, 574 (Phila. CCP 1975); *In re Mushroom Direct Purchaser Litigation*, 514 F. Supp. 2d 683 n. 13 (E.D. Pa. 2007); *In re Mushroom Direct Purchaser Litigation,* 2008 WL 583906, *3 (E.D. Pa. 2008).

*prejudice, or to cause the removal of that school board member from PSBA's Governing Board by discontinuing that district's own entity membership in PSBA – which, per PSBA's attached bylaws, Article III, Section 4(A)(2), would automatically disqualify that district's director from further service on the Governing Board.*

*It is my clients' position that, by permitting its individual director to continue to serve on the Governing Board of PSBA while PSBA filed, amended, and to this day refuses to dismiss with prejudice its unconstitutional SLAPP Suit, each of your district clients has ratified the prior and continuing conduct of its individual directors acting as PSBA Governing Board directors. It is further my clients' position that such ratification means that each of your district clients is acting in concert with PSBA to violate my clients' constitutional rights and therefore are jointly and severally liable to my clients in damages pursuant to Section 1983, and otherwise.*

My clients don't need to join your respective school district clients as defendants in the current injunction phase of this case because an injunction against PSBA and the seven currently-serving individual defendants (who have a controlling majority of the Governing Board) will be sufficient to force the with-prejudice dismissal of the underlying SLAPP Suit. Once that injunction issues, however, it is my clients' intention to amend their Complaint for the damages phase of the case (which will have entirely new, and separate, discovery and trial tracks), to add each of your school district clients as defendants.

Thus, to the extent that anyone needs clarification that a claim for monetary damages is being asserted against each of your district clients, please consider this a notice of claim. And every day that passes where your respective district client fails to act either to *cause their PSBA Governing Board director to cause PSBA to dismiss the SLAPP Suit, or, alternatively, fails to act to remove its director from PSBA's Governing Board by voting to discontinue PSBA entity membership,* is a day that your district client's exposure to awards in my client's favor for substantial compensatory damages and ever-growing Section 1988 attorneys' fees, increases.

With all of that being said, Plaintiffs are willing to entertain a settlement dialogue with any or all of your district clients. *Those who*

*act swiftly to do everything in their power to cause the prompt dismissal of the SLAPP Suit and disavow their prior ratification of their own director's unconstitutional actions under color of state law may expect to be able to negotiate far better settlement terms than those districts that continue to ratify and support PSBA's SLAPP Suit* and their own directors' role in continuing PSBA's First Amendment retaliation against my clients.

I hope to hear from some or all of you soon.

(May 13 Email, Exhibit D-39)(emphasis added).

### 2.    The May 15 Email to Solicitors.

On May 15, 2018, Cohn emailed ("May 15 Email") the same group of Solicitors that he contacted on May 13.  Cohn repeated his litigation threats.  Cohn did not copy Levin, even though he knew or should have known that his email would be provided to Levin's clients—the Individual Defendants.   Cohn also disparaged counsel for the Defendants, Levin, as professionally incompetent, making "nonsensical filings," and engaging in "obstructionist discovery tactics." Cohn further suggested that Levin should not continue as PSBA's counsel. (May 15 Email, Exhibit D-40).  The May 15 Email states:

Dear School District Solicitors,

      * * *

So, why am I writing to you again? To be polite. I was very polite to Mike Levin and PSBA's SLAPP Suit counsel, David Heim. I told them exactly what was going to happen if they didn't dismiss PSBA's SLAPP Suit. I gave them multiple opportunities to do so, either for nothing, or for a very small fraction of what it s [sic] now going to cost to make this problem go away. And now, we are busy cleaning

their clocks.

Now, I am being polite to your school districts and their insurers. *Like it or not, your clients are all passengers on board Mike Levin's and Nathan Mains's "Crazy Train"* by virtue of your clients' sponsorship of the PSBA Governing Board Directors who directed the filing, amendment, and maintenance of the SLAPP Suit. To a person, these Governing Board directors, many of whom are the presidents of the boards of your school district clients, refuse to consent to any monetary settlement with my clients. *Further, they have been trained by Mike Levin to believe that their only fiduciary duty in this situation runs to PSBA, not to their home districts that sponsor them as PSBA Governing Board members*.[16] But as we wrote to the Court in Plaintiffs' injunction motion reply brief, filed yesterday (copy attached), "[t]he individual Defendants' status as PSBA Governing Board members and their status as elected members of public school boards is indistinguishable" in light of PSBA's own bylaws. Obviously, then, the claims against the individual Defendants "arise" from their service as members of your client's own boards.

*Now, we all know what happens to the "Crazy Train" in Ozzy Osborne's song. It's "going off the rails." And Mr. Campbell is serious as a heart attack about pursuing all responsible parties to the fullest extent of the law, including pursuing the individual Defendants for non-indemnifiable punitive damages.*

You each now have copies of the Complaint, and the fully-briefed injunction motion, and the motion to dismiss. Please make your own evaluations of the relative merits of the parties' legal positions, *the relative quality of the briefing and representation of your district's directors, and the advisability of permitting Mr. Levin to continue*

---

[16] Cohn's assertion that School District's "sponsor" PSBA Governing Board members is a total fabrication that is devoid of evidentiary support. PSBA Governing Board members serve without any sponsorship by the School District on which they serve. They serve regardless of whether their School Board votes for them, does not vote at all, or votes against them. (*See, e.g.*, King Declaration, ¶13, Exhibit D-75; Faccinetto Declaration, ¶5, Exhibit D-74).

***representing the individual Defendants under the circumstances.***

Each of your clients is on notice of a claim for monetary damages potentially covered under your E&O coverage. Each of your clients is on notice of an "occurrence" and/or an "offense" that is reasonably likely to give rise to a claim that is potentially covered under your client's GL Coverage. One or both of your client's E&O and GL policies gives your insurer(s) the right to investigate and settle, and the right and duty to defend. One or both of your client's insurance policies provides for payment of "costs" as supplementary payments outside of indemnity limits. Attorneys fee awards under 28 U.S.C. § 1988 (civil rights fee-shifting statute) are expressly defined to be part of the "costs" of suit. ***Our fees to date in the federal action alone are already several hundred thousand dollars,***[17] ***and increasing rapidly as we conduct compressed discovery, deal with Mike Levin's nonsensical filings and obstructionist discovery tactics, and prepare for a rapidly-approaching July 23 final injunction trial.*** And PSBA's eroding E&O policy is expressly excess of any other primary policy insuring an individual Defendant containing duty to defend.

***If any of your clients or their insurers would like to get your school district client and/or its individual Defendant off the "Crazy Train",*** please feel free to have someone with settlement authority contact me. To be clear, after the final injunction has issued, and the damages phase of the case gets underway, it is fully my clients' intention to amend their complaint to add new parties that will include all non-settling school district sponsors of the individual Defendants, and the price to get off the train will be far higher than it already is.

(May 15 Email, Exhibit D-40)(footnote and emphasis added).

### 3.    The May 16 Email to Solicitors.

On May 16, 2018, Cohn sent another email to the School District Solicitors.

_____

[17] It should be noted that this assertion was made by Cohn on May 15, before a single deposition had been taken and early in the discovery phase of this litigation. The court filings by Cohn through that point in time were the Complaint, the response to the Motion to Dismiss and the Preliminary Injunction materials.

("May 16 Email," Exhibit D-55).  Again, Cohn failed to copy Levin.  In the May 16 Email, Cohn continued his litigation threats.  He also expanded those threats by suggesting that PSBA should not have learned about the earlier emails, even though the threatened School Districts have Board members who also serve on the PSBA's Governing Board.  The May 16 Email states:

> Dear Solicitors,
>
> ***It didn't take very long for one or more of you (or the people that you forwarded it to) to forward my below email to PSBA*** – presumably with the assent of the respective school district and its insurers. So much for my trying to be polite and send you a confidential settlement communication. If any of you, or your district's insurers, actually want to have a productive, confidential settlement dialogue, please feel free to reach out to me separately to affirm an undertaking of confidentiality.
>
> ***In the meantime, the forwarders*** [of Cohn's earlier emails to PSBA] ***created documents that are responsive to Plaintiffs' outstanding discovery requests to the existing Defendants that must be identified and produced to us pursuant to Defendants discovery obligations under the Federal Rules. Please let the sender(s) and their district's insurers know that their districts will not be looked upon favorably in settlement discussions as a result of this breach of "etiquette."***

(May 16 Email, Exhibit D-55).

In this email, Cohn is threatening solicitors that their districts will be treated less favorably if they or their clients forwarded the emails to PSBA or to Levin.[18]

---

[18] Rule 1.4 (a)(3) of the Rules of Professional Responsibility requires attorneys to "keep the client reasonably informed about the status of the matter . . .." Pa. R.P.C. 1.4(a)(3).  It would, consequently, be wholly appropriate for any solicitor to send copies of Cohn's emails to the School Boards.  It would also be

### 4.    Cohn's May 2018 Emails to Attorneys John Freund, III and Donald Spry, II of the King Spry Firm

In the latter part of May 2018, Cohn sent a series of emails to John Freund, III and Donald Spry, II, of the firm King Spry Herman, Freund and Faul, LLC. (Exhibits D-57, D-58 and D-60). The King Spry firm is Solicitor for Northwest Lehigh School District and Bethlehem School District. (Freund Affidavit, ¶12, Exhibit D-70).

In the May 2018 emails to Freund and Spry, Cohn continued his threats to sue these School Districts on the unfounded basis that the Districts "ratified" the State Court Action because their board members serve on the PSBA Governing Board. (Exhibits D-57, D-58 and D-60). Continuing his personal attacks on opposing counsel, Cohn disparaged one of Individual Defendant, Michael Facinnetto's, lawyer, Susan Weiner, as "*literally clueless.*" (Exhibit D-60, second parag.)(emphasis added).[19]

Freund pointed out to Cohn that his theory of liability for the School Districts was "frivolous." (May 29, 2018, email Freund to Cohn, Exhibit D-58 on

wholly appropriate for the Individual Defendants, having obtained Cohn's emails, to provide them to PSBA and Levin. For Cohn to suggest that any of this is inappropriate, or a reason to treat a school district less favorably further highlights the inappropriateness of Cohn's conduct.

[19] Ms. Weiner recently withdrew as counsel for Mr. Faccinetto and another lawyer took her place in that role—Eric Bronstein.

second page).  Freund explained to Cohn the following points:

> . . . Mr. Schafer's role as a member of the PSBA Governing Board is completely independent of his position as a publicly elected member of the Northwestern Lehigh School Board.  As a former member of PSBA's Executive Board myself, I am aware that members vote their conscience and do not require or seek permission of ratification of the positions they take on the PSBA Board from their home school boards.
>
> The theory by which you proposed to join NWLSD [Northwest Lehigh School District] lacks any evidentiary or legal support . . . .

*Id*. (brackets added).

### 5.   Cohn's May 2018 Emails to Attorney Cassidy

In the latter of part of May 2018, Cohn sent a series of emails to Michael Cassidy, Esquire, who is Solicitor for Cumberland Valley School District.  (Exhibit D-59).   In the emails with Cassidy, Cohn continued with his threat to sue the School District based upon the theory that by doing nothing the District ratified the State Tort Action.[20]  (Exhibit D-59).  Cassidy pointed out to Cohn that "while Mr. Gossert [a Cumberland Valley School District Board member] may be eligible to serve on the PSBA Board of Directors because of being an elected member of the Cumberland Valley SD Board of School Directors, he serves on the PSBA Board of Directors in his individual capacity and not in a representative capacity."

---

[20] As with Cohn's assertion that School District "sponsor" the PSBA Governing Board members, Cohn's assertion that the School District have "ratified" PSBA's actions have no support legally or factually.  (Faccinetto Declaration, ¶9, Exhibit D-74).

(Exhibit D-59, p.3, top of page, May 18 email Cassidy to Cohn)(bracket added).
Cohn continued to disparage counsel for the Defendants accusing Michael Levin of
"***trying to cover up his own exceedingly bad advice to his clients*** . . .," (Exhibit D-
59, p.3, bottom of page, in May 18, 2018, email Cohn to Cassidy), and being
"***motivated by utter hatred of Simon***."[21]  *Id*. (emphasis added).

### 6.    Cohn's June 23, 2018, Email to the Solicitors

On or about June 23, 2018, Cohn again emailed the Solicitors. ("June 23
Email", Exhibit D-80).  Cohn repeated his litigation threats adding the possibility
of the Districts being faced with "Dragonetti claims."  (June 23 Email, Exhibit D-
80).  Cohn claimed that his clients "were no longer interested in entertaining
separate settlement dialogues with your District clients."  (June 23 Email, p.2,
Exhibit D-80).  Cohn insisted that the "sponsoring Districts would still be well-
advised to use their absolute ability to remove their sponsored member from
PSBA's Governing Board either to cause PSBA to end the SLAPP suit or to act to
remove their sponsored member from the Governing Board.  (June 23 Email, p.2,
Exhibit 80).  This was a continuation of Cohn pressuring Districts to cancel their
PSBA memberships to prevent the Districts' Board members from serving on
PSBA's Governing Board.

---

[21] There is no basis whatsoever for the factual implications underlying this aspect
of Cohn's disparagement of opposing representation---that Mr. Levin has given
any bad advice or harbors any hatred for Mr. Campbell.

### G.   Cohn's Use of Deposition Questioning to Disparage Defense Counsel in this Case

Cohn engaged in questioning of PSBA Board members with the apparent purpose of attacking the representation they are receiving in this case and undermining the attorney-client relationship.  This is illustrated in the deposition questioning of Individual Defendants, Otto Voit and Darryl Schafer.  (Exhibits D-88, pp. 47-58 and D-166, pp. 80-100).   Their depositions involved extended questioning that had nothing to do with the issues in this case and that were clearly outside of the scope of Rule 26 of the F.R.C.P.   Rather, Cohn implied, and sometimes asserted, that the witnesses were not being properly represented.   For example, Cohn flatly stated to Voit that "you might want to get your own independent counsel who does not have a conflict of interest with respect to the representation of PSBA."  (Voit Depo., p. 48, Exhibit D-88).  Cohn suggested to Schafer that Defense counsel had not properly accepted service of the Complaint on Schafer's behalf.  (Schafer Depo., p.80-83, Exhibit D-166).  Cohn also implied that counsel was not informing Voit and Schafer of matters regarding settlement. (Exhibits D-88, pp. 47-58 and D-166, pp. 80-100).

### H.   Cohn's Disparagement of Bochetto & Lentz to Individual Defendants and Suggestion that the Court Joins in those Views

Bochetto & Lentz, P.C. ("B&L") represents PSBA in the State Tort Action. Cohn used deposition questioning of PSBA Board members as a vehicle for

making personal attacks on B&L and suggesting that the board members had not been kept appropriately informed by their other counsel about B&L. Cohn's questions characterized B&L as not well-respected, "bullies," not scholarly, "extra nasty," as having a practice of suing people for exercising First Amendment rights, and a hired gun retained to "teach Simon Campbell a lesson." (Faccinetto Depo., pp. 154-156, Exhibit D-69; Swope Depo., pp. 119-120, Exhibit D-87). Moreover, Cohn even went to far as to suggest in his deposition questions that this Court holds negative views of B&L. (Faccinetto Depo., p. 154, Exhibit D-69)(Cohn asks: "Anybody tell you what the judge's reaction was when it was mentioned that Bochetto & Lentz was counsel in the underlying action.").

## III.   STANDARD OF REVIEW FOR A MOTION TO DISQUALIFY COUNSEL

The following legal standards apply to this Court's consideration of this Motion for Sanctions.

"Federal courts have inherent authority to supervise the conduct of attorneys appearing before them." *Jordan v. Philadelphia Housing Authority*, 337 F. Supp. 2d 666, 671 (E.D. Pa. 2004)(*citing*, *In re Rite Aid Corp. Sec. Litig.,* 139 F.Supp.2d 649, 655 (E.D.Pa.2001)).

The "United States District Court for the Eastern District of Pennsylvania has adopted the Pennsylvania Rules of Professional Conduct to govern attorneys appearing before it. *See* E.D. Pa. Local R. Civ. P. 83.6, Part IV(B)." *Jordan*, 337

F. Supp. 2d at 672.

A trial court may sanction, warn or recommend disciplinary action against an attorney who has violated a Rule of Professional Conduct. *Commonwealth v. Lambert*, 765 A.2d 306, 345-46 (Pa. Super. 2000).

Counsel may be disqualified if the Court determines on the facts of the particular case that disqualification is an appropriate means of enforcing the applicable disciplinary rule, given the ends that the disciplinary rule is designed to serve. *Jordan*, 337 F. Supp. 2d at 672 (*citing*, *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980)).

The party seeking disqualification bears the burden of showing that the representation is impermissible. *Jordan*, 337 F. Supp. 2d at 672 (*citing*, *In re Rite Aid Corp. Sec. Litig.,* 139 F.Supp.2d 649, 656 (E.D.Pa.2001)). Any doubts regarding the existence of a violation of an ethical rule should be construed in favor of disqualification. *Jordan*, 337 F. Supp. 2d at 672 (*citing*, *Int'l Bus. Mach. Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir.1987)); *In re Rite Aid Corp.,* 139 F.Supp.2d at 656; *Reading Anthracite Co. v. Lehigh Coal & Navig. Co.,* 771 F.Supp. 113, 115 (E.D.Pa.1991).

"In determining whether disqualification is appropriate, the Court must . . . consider countervailing policies, such as permitting a litigant to retain his chosen counsel and enabling attorneys to practice without excessive restrictions."

*Jordan*, 337 F. Supp. 2d at 672.

The Pennsylvania courts have held that disqualification is a serious remedy that should be used only when counsel's conduct threatens to disrupt the fair trial that due process requires. *Sutch v. Roxborough Memorial Hospital*, 151 A.3d 241, 255-56 (Pa. Super. 2017)(citing cases). Despite the seriousness of disqualification, the courts have disqualified counsel when an ethical violation has occurred. *Sutch*, 151 A.3d at 256-57.

Courts are empowered to impose as a sanction an award attorney fees and/or costs to address expenses a party incurs as a result of a lawyer's violation of the Rules of Professional Conduct. *Sutch*, 151 A.3d at 260 (awarding as a sanction attorneys' fees and costs Plaintiff incurred in obtaining an order disqualifying counsel for Defendant doctor)[22]. The *Sutch* Court awarded attorneys' fees and costs under on 42 Pa.C.S.A. §2503(7). Section 2503(7) authorizes an award of counsel fees against "participant[s]" for "dilatory, obdurate or vexatious conduct during the pendency of a matter." *Sutch*, 151 A.3d at 260 (quoting, 42 Pa.C.S.A. §2503(7)). Sanctions in the form of attorney fees are justified when counsel pursues issues or claims he/she knows, or should know, are baseless. *Sutch*, 151 A.3d at 260 (*citing*, *Estate of Liscio*, 432 Pa.Super. 440, 638 A.2d 1019, 1022

---

[22] *See, Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178 (2017)(federal court's inherent power to impose sanctions, including attorneys' fees).

(1994).

## IV.   ARGUMENT

As demonstrated herein and in the Davis Opinion Letter (Exhibit D-165), Attorney Cohn's violation of the Rules of Professional Conduct requires his and his firm's disqualification as counsel for Plaintiffs and/or an award to Defendants of attorneys' fees and costs.[23]   The United States Supreme Court has held that "[f]orce directed toward parties or witnesses to proceedings during their pendency is so sinister and undermining of the process of adjudication itself that no court should regard it with indifference or shelter it from exposure and inquiry." *NLRB v. Indiana and M.E. Co.*, 318 U.S. 9, 29 (1942).   Cohn has taken such actions towards parties and witnesses.   Cohn communicated with the Individual Defendants through School District Solicitors in emails he knew, or should have known, would be shared directly with the Individual Defendants.   In those emails, he disparaged the Individual Defendants' counsel in this case and discussed matters that are at issue in this case.   He threatened legal action against the third-party School Districts when there is no legal or factual basis to do so, in order to

---

[23] As to attorneys' fees, Defendants seek the fees incurred in responding to Cohn's violation of the Rules of Professional Conduct.  This includes, but is not limited to, the fees incurred in filing this Motion for Sanctions.  If the Court determines that attorney fees and costs should be awarded, Defendants will submit an appropriate filing that identifies the fees and costs sought.  At this point, the sanctions matter continues, and Defendants continue to incur attorneys' fees and costs as result of Cohn's violation of Rules of Professional Conduct.

attack the attorney-client relationship of defendants and their counsel of record, to improperly influence the decisions of defendants about directing the litigation, and to intimidate witnesses.  He used depositions to attack Defense counsel for the purpose of undermining attorney-client relationships.   In doing all of this, Plaintiffs' counsel violated Rules of Professional Conduct 4.2, 3.4, 4.4 and 8.4, as well as other Rules of Professional Conduct discussed in the Davis Opinion Letter. As explained below, these violations require disqualification and/or sanctions in the form of attorneys' fees and costs.

### A.   Based Upon the Violation of Rule of Professional Conduct 4.2, Cohn and His Firm Should be Sanctioned Through Disqualification or an Award of Attorneys' Fees and Costs

As detailed here and the Davis Opinion Letter, Cohn violated Pa.R.P.C. 4.2, which is titled "Communication with Person Represented by Counsel."  As a result, Cohn and his firm should be sanctioned through disqualification as Plaintiffs' counsel and/or an award to Defendants of attorneys' fees and costs.

Rule 4.2 states as follows:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa.R.P.C. 4.2.

The Explanatory Comment to Rule 4.2 explains:

This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter *against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship* and the uncounseled disclosure of information relating to the representation.

Pa.R.C.P. 4.2, Explanatory Comment [1]. (Emphasis added)

The Explanatory Comment to Rule 4.2 further instructs that "[a] lawyer may not make a communication prohibited by this Rule through the acts of another." Rule 4.2 is, therefore, violated when a non-attorney acting at the behest of an attorney communicates with a party in litigation who is represented by counsel. *U.S. v. McNaughton*, 848 F. Supp. 1195, 1202-03 (E.D. Pa. 1994)(Rule 4.2 violated when an investigator, acting at the direction of government attorneys, communicated directly with party who was represented by counsel).

In this case, Cohn sent emails to School District Solicitors whom Cohn knew, or should have known, had a duty to transmit those emails, or the information contained therein,[24] to school boards of which the Individual Defendants were members. Cohn improperly used the Solicitors as a vehicle for communicating with the Individual Defendants about matters at issue in this case, to disparage the Defendants' counsel to the clients, and to disparage the legal advice being given by defense counsel. Counsel for the Defendants in this case

---

[24] Rule 1.4(a)(3) provides that an attorney has a duty to "keep the client reasonably informed about the status of the matter." PA ST RPC Rule 1.4

were not copied on those emails.  In fact, by his own admission, Cohn intended that the emails be kept from counsel for the Defendants in this case based upon some sort of confidential "etiquette" that Cohn seems to have created in his own mind.  (Exhibits D-55 and D-57).

Because of Cohn's actions, he communicated with the Individual Defendants out of the presence of their counsel in this case on matters of importance and sensitivity at issue in this litigation.  Cohn should have known that his actions violated Rules of Professional Conduct.  Indeed, Cohn should have anticipated that the Individual Defendants would receive his emails, or the information contained therein, and may react with alarm at being blamed for exposing their School Districts to potentially large damages and having their lawyers accused of incompetence and unethical behavior.  Cohn's emails, therefore, are precisely the kind of communications that Pa.R.P.C 4.2 prohibits: overreaching communications with represented parties on issues in this litigation that potentially interfere with the Individual Defendants' relationship with their lawyers.

Given the number of Cohn's email communications, and the persistence of his conduct, the Court should sanction Cohn and his firm, through either disqualification or an award to Defendants of attorneys' fees and costs, "to assure due process and fair trial are protected." *Sutch*, 151 A.3d at 257.  Cohn's conduct

demonstrates that absent disqualification or an award to Defendants of attorneys' fees, he will not be "dissuaded from "continuing . . . tactics" that seek to interfere with witnesses and disrupt the relationship of the Individual Defendants and their counsel. *Sutch*, 151 A.3d at 257.

For this reason, this Court should disqualify and/or award attorneys' fees against Cohn and his firm based upon a violation of Pa.R.P.C. 4.2.

**B.     Based Upon the Violation of Rule of Professional Conduct 3.4, Cohn and His Firm Should be Sanctioned Through Disqualification or an Award of Attorneys' Fees and Costs**

Cohn violated Pa.R.P.C. 3.4, which is titled "Fairness to Opposing Party and Counsel."   As a result, Cohn and his firm should be sanctioned through disqualification as counsel for Plaintiffs or an award to Defendants of attorneys' fees and costs.

Rule 3.4(a) directs that:

A lawyer shall not:

(a)  unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act;

Pa.R.P.C. 3.4(a).

In *Sutch,* the Court found that an attorney for a medical malpractice defendant violated Pa. R.P.C. 3.4(a), and sanctioned that attorney through disqualification and the payment of attorney's fees, because the attorney sent a

series of letters regarding Plaintiff's expert medical witness to the General Counsel of the hospital where the expert witness was employed.  In the letters, the lawyer attacked the expert's testimony as "untenable" and asserted that the expert was exposing the hospital to liability.  *Sutch*, 151 A.3d at 246, 257.  The Court held that counsel's threatening letters violated Pa.R.C.P. 3.4(a), as they had the effect of obstructing another party's access to evidence.  *Sutch*, 151 A.3d at 257.

At bar, acting in an eerily similar manner, Cohn wrote to the Solicitors for School Districts that have Board members who serve on PSBA's Governing Board.  Cohn threatened to sue the Districts based upon the involvement of their Board members with PSBA.  Cohn knew, or should have known, that his threats may intimidate School District officials, especially Board members, who are potential witnesses on the subjects listed above.  Witnesses can be intimidated.  Cohn recognizes that the Board members are witnesses.  (Pls' Initial Disclosures, p.4, Exhibit D-64).  ***In the wake of Cohn's threats, Defendants cannot know what witnesses may have information -- potentially valuable information -- that could support the defenses to Plaintiffs' claims but will not come forward out of fear of the legal consequences of doing so.***[25]  ***This is a real and serious harm***

_____

[25] Indeed, as an officer of the Court, Mr. Levin can report that one potential witness declined to provide an Affidavit or Declaration in this case precisely because of the threats by Cohn.  This occurred on June 29, 2018.  The affidavit or declaration would have been used in support of the Motion for Summary Judgment.

*that Cohn's conduct has caused.*

For these reasons, the Court should hold that Cohn and his firm violated Pa. R.C.P. 3.4(a) such that they should be disqualified as counsel for Plaintiffs or sanctioned through the imposition of attorneys' fees and costs.

### C.   Based Upon the Violation of Rule of Professional Conduct 4.4, Cohn and His Firm Should be Sanctioned Through Disqualification or an Award of Attorneys' Fees and Costs

As explained here and in the Davis Opinion Letter (Exhibit D-165), Cohn violated Pa.R.P.C. 4.4, which is titled "Respect for Rights of Third Parties."  As a result, Cohn and his firm should be sanctioned through disqualification as counsel for Plaintiffs and/or an award to Defendants of attorneys' fees and costs.

Rule 4.4(a) directs that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

In *Sutch*, discussed above, that Court held that the attorneys' threatening letters to the General Counsel of a hospital that employed a medical malpractice Plaintiff's expert witness violated Pa.R.P.C. 4.4.  As previously explained, the letters attacked the opinion being proffered by the plaintiff's expert witness and asserted that the expert witness may lead to liability for the hospital.  The Court concluded that the threats had no other "substantial purpose" than to "embarrass,

delay or burden" the plaintiff. *Sutch*, 151 A.3d at 257 (citations omitted). The Court concluded that the "only purpose for [the] letters was to advance [defense counsel's] goal of forcing [the expert] to change her testimony or refrain from testifying." *Sutch*, 151 A.3d at 257 (brackets added).

As in *Sutch*, there are no legitimate legal or factual grounds for Cohn's threats against School Districts or his disparagement of the Individual Defendants' counsel. Cohn's threats against them have no other purpose than to embarrass and burden the Districts and their officials with accusations of unlawful conduct and liability for same.

When Cohn sent his threatening emails to the School District Solicitors in mid-May 2018, no information had been developed through discovery on the supposed responsibility of the School Districts, and their Boards, for the state court lawsuit against Campbell and Pennsylvanians for Union Reform. Cohn, therefore, made his litigation threats before he had any evidence to support the threats. (He still has no evidence.). His threats against the School Districts are, quite plainly, frivolous.

Cohn's intention to embarrass and burden the School Districts is also evident given that his litigation threats are premised upon a theory of liability for which there is no support under Pennsylvania law. Cohn posits a flawed legal theory that School Districts are liable to Plaintiffs because they ratified PSBA's State Tort

Action by remaining members of PSBA rather than cancelling memberships in the organization so that the School Districts' Board members can no longer serve on PSBA's Board.  (May 13 Email, Exhibit D-39).

In Pennsylvania, a member of a nonprofit corporation is not liable for the corporation's actions based on membership in the corporation alone.  15 Pa.C.S.A. §5553(a), titled "Liabilities of members," states as follows:

> **(a) General rule. --** A member of a nonprofit corporation ***shall not be liable, solely by reason of being a member***, under an order of a court or in any other manner for a debt, obligation or liability of the corporation of any kind or for the acts of any member or representative of the corporation.

15 Pa.C.S.A. §5553(a)(emphasis added).

To be liable for acts of a nonprofit corporation, its members must have taken some action beyond maintaining their memberships.  *Fraim v. Katz*, 68 Pa. D. & C.2d 567, 574 (Phila. CCP 1975); *In re Mushroom Direct Purchaser Litigation*, 514 F. Supp. 2d 683 n. 13 (E.D. Pa. 2007); *In re Mushroom Direct Purchaser Litigation,* 2008 WL 583906, *3 (E.D. Pa. 2008).   But, in the face of this governing law, Cohn maintains that all that is needed to impose liability is for the School Districts to remain PSBA members.  (May 13 Email, Exhibit D-39). Cohn's position on ratification, therefore, is baseless.

Moreover, as members of PSBA, a nonprofit corporation, the School Districts had to have knowledge of the lawsuit and the power to file the lawsuit

themselves.  *Schwartz v. Mahoning Valley Country Club*, 114 A.2d 78, 80 (Pa. 1955); *Sword v. Reformed Congregation of Kennesth Israel*, 29 Pa. Super. 626, 630 (Pa. Super. 1905)("Ratification implies knowledge of the material facts, and to be effective must be made by persons having the power to perform the act which is the subject of ratification.").  Cohn cannot credibly claim that the School Districts as members of the PSBA have such knowledge or power.

Cohn's assertion that the School Districts should cancel their memberships in PSBA to avoid liability has no purpose other than to embarrass and burden the Districts.  (June 23 Email, Exhibit D-80).  The Districts' presence or absence from PSBA membership will have no effect on the State Tort Action.  It appears, therefore, that Cohn's exhortations for School Districts to leave PSBA are intended to harm PSBA by encouraging members to leave the organization.

Finally, Cohn's highly personal attacks on Michael I. Levin, Susan Weiner and B&L have no purpose other than to cause those counsel embarrasment and disrupt the attorney-client relationships with PSBA.  Cohn seems unconcerned with causing damage to other lawyers' professional reputations.  There is no reason to treat counsel in that highly inappropriate manner.

For these reasons, Cohn and his firm should be sanctioned for violating Pa. R.P.C. 4.4 either through disqualification and/or an award to Defendants of attorneys' fees and costs.

**D.      Based Upon the Violation of Rule of Professional Conduct 8.4, Cohn and His Firm Should be Sanctioned Through Disqualification or an Award of Attorneys' Fees and Costs**

As explained here and in the Davis Opinion Letter (Exhibit D-165), Cohn violated Pa.R.P.C. 8.4[26], which is titled "Misconduct."  As a result, Cohn and his firm should be sanctioned through disqualification as counsel for Plaintiffs and/or an award to Defendants of attorneys' fees and costs.

Rule 8.4 states as follows:

It is professional misconduct for a lawyer to:

(a)      violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\*                    \*                    \*

(d)      engage in conduct that is prejudicial to the administration of justice . . .

Pa. R.P.C. 8.4(a) and (d).

By its plain language, Pa.R.P.C. 8.4 serves as a check on improper and unethical actions such as "conduct that is prejudicial to the administration of justice."  Pa.R.P.C. 8.4(d).

Here, Cohn communicated indirectly with represented parties,

---

[26] The Davis Opinion letter, pp. 9-10 (Exhibit D-165) also explains how Cohn violated Pa.R.P.C. 4.1, which provides that "in the course of representing a client a lawyer shall not knowingly: (a) make false statement of fact or law to a third person . . ."

communicated with potential witnesses in an intimidating manner,[27] and disparaged counsel for the Defendants apparently to disrupt the attorney-client relationship.  Indeed, Cohn directly attacked the ethics and competence of Defense counsel directly to their clients. This is precisely the kind of conduct that Rule 8.4 is designed to address – conduct that violates Rules of Professional Conduct and interferes with the proper administration of justice.  It is similar in nature to the conduct for which the *Sutch* Court disqualified and awarded attorney's fees against a lawyer under Pa.R.P.C. 8.4.  It is clear from Cohn's course of conduct that, without the imposition of sanctions, he will continue to pursue the same course of conduct.

For these reasons, Cohn and his firm should be sanctioned for the violation Pa.R.P.C. 8.4 through disqualification or an award to Defendants of attorneys' fees and costs.

---

[27] Cohn used deposition questions to intimidate Individual Defendants.  In one instance, he used deposition questions to falsely suggest to Defendant Swope that, if punitive damages were awarded against her, those damages would have to be paid from her own assets and could not be paid by PSBA. (Swope Depo., p. 261-263, Exhibit D-87).

## I.   CONCLUSION

For all the reasons stated above, the Defendants respectfully request that this Court grant the Motion and disqualify Cohn and his firm and award Defendants their attorneys' fees, costs, and such further relief in their favor that the Court deems appropriate.

Respectfully submitted,


Date:  July 20, 2018                    */s/ Craig D. Ginsburg*
                                        Michael I. Levin (PA 21232)
                                        David W. Brown (PA 201553)
                                        Craig D. Ginsburg (PA 56445)
                                        LEVIN LEGAL GROUP, P.C.
                                        1301 Masons Mill Business Park
                                        1800 Byberry Road
                                        Huntingdon Valley, PA 19006
                                        Phone: (215) 938-6378
                                        mlevin@levinlegalgroup.com
                                        dbrown@levinlegalgroup.com
                                        cginsburg@levinlegalgroup.com
                                        *Attorneys for Defendants*

44

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 20th day of July 2018, I electronically transmitted the foregoing Motion for Sanctions and the accompanying Memorandum of Law to be filed to the Clerk's Office using the Court's Electronic Case Filing system ("ECF") for filing and transmittal of a Notice of Electronic Case Filing to all counsel via the ECF, in accordance with Fed. R. Civ. P. 5(b) and E.D. Pa. L.R. 5.1.2.

*/s/Craig D. Ginsburg*
Craig D. Ginsburg