## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMON CAMPBELL, *et al.*, | : |
| | : |
| Plaintiffs, | :   CIVIL ACTION |
| | : |
| v. | :   NO. 18-CV-892-JD |
| | : |
| PENNSYLVANIA SCHOOL BOARDS | :   JURY TRIAL DEMANDED |
| ASSOCIATION, *et al.* | : |
| | : |
| Defendants. | : |

### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs, Simon Campbell

("Campbell") and Pennsylvanians for Union Reform ("PFUR", and collectively with Campbell

"Plaintiffs"), hereby request Defendants, Pennsylvania School Boards Association, Nathan

Mains, Michael Faccinetto, David Hutchinson, Otto W. Voit III, Kathy Swope, Lawrence

Feinberg, Eric Wolfgang, Daniel O'Keefe, Darryl Schafer, Thomas Kerek, and Lynn Foltz

("collectively, "Defendants") produce for inspection and copying within thirty (30) days of

service of this request, or such shorter time as may be established by the Court, the herein-

requested documents and things in Defendants' possession, custody, or control. Documents in

Defendants' possession, custody, or control shall include, without limitation, Documents

possessed or held by any Defendant or any of their respective officers, directors, employees,

agents, representatives, divisions, affiliates, subsidiaries, or persons acting under any of their

direction or on any of their behalf. If Documents responsive to a request are under Defendants'

control but not within their possession or custody, your response shall identify the persons with

such possession or custody of such Documents.

In lieu of inspection, Defendants may produce copies of the requested documents. In that

event, the place of production shall be the offices of Gordon & Rees, Scully, Mansukhani LLP,

**EXHIBIT**

**D-63**

2005 Market Street, Suite 2900, Philadelphia, PA 19103. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

Pursuant to Fed. R. Civ. P. 34(b)(2)(B), your response to each item or category must either state that inspection will be permitted as requested (or that documents will be produced), or state with specificity the grounds for objecting to the request, including the reasons. Any documents withheld from production on the basis of any claim of privilege shall be identified and described in sufficient detail to enable Plaintiffs to evaluate and contest the claim of privilege.

Electronically stored information ("ESI") is generally subject to the same preservation and discovery requirements as other relevant information. Accordingly, your response to these document requests shall identify:

1. ESI custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.

2. Non-custodial data sources. A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. Third Party Data Sources. A list of third party data sources, if any, likely to contain discoverable ESI (e.g. third party email and/or mobile device providers, "cloud" storage, social media accounts, etc.) and for each such source, indicate the extent to which a party is (or is not) able to preserve information stored in the third party data source.

4. <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

When the use of search terms is reasonably necessary to locate ESI likely to contain discoverable information, the parties shall try to reach agreement on appropriate search terms. A producing party shall disclose what search terms, if any, were used to locate ESI likely to contain discoverable information. If search terms were not used, the producing party shall disclose the search methodology used to locate ESI likely to contain discoverable information.

The parties shall confer and agree on the format in which they produce ESI and non-ESI. It is presumed that ESI shall be produced to the requesting party with searchable text, in a format to be decided between the parties (e.g., TIFF with a companion text file). Unless otherwise agreed to by the parties, the only files that should be produced in native format are files not easily converted to image format, such as Excel, Access files, and drawing files. The parties shall confer and agree on whether metadata is to be produced and if so, what metadata will be produced, or whether metadata shall be excluded from discovery.

After counsel has reviewed these requests and conferred with Defendants, counsel for Plaintiffs stand ready to confer regarding the scope and nature of ESI searches as well as the manner, contents, and nature of production of ESI, including metadata.

These requests seek all responsive documents created or modified from and after January 1, 2015.

These requests are continuing in nature, requiring timely supplementation of responses as required by Fed. R. Civ. P. 26(e).

**DEFINITIONS**

The terms defined below shall have the following meanings:

1.      The terms "YOU" and/or "YOUR" refers to each of the Defendants including, without limitation, PSBA's employees, director(s), shareholder(s), or agents, or any person or entity acting for or on behalf of any Defendant.

2.      The term "DOCUMENTS" shall mean writings, recordings, and photographs as defined by Fed. R. Evid. 1001, the documents listed in Fed. R. Civ. P. 34(a)(1)(A), and includes the original or a copy of tangible items which contain handwriting, typewriting, printing, photostatic reproduction, photographic reproduction, electronically or magnetically stored information, and every other means of recording upon any tangible thing, and any other form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them, and shall include but not be limited to agreements, contracts, communication, (including intra-association communications), correspondence, e-mails, text messages, tweets, social media posts, websites, comments posted to websites, telegrams, telexes, memoranda, records, books, reports, ledgers, working papers, checks (front and back), check stubs, deposit slips, bank statements, brokerage statements, depository statements, pawn tickets, tax returns, surveys, analyses, studies, statements, speeches, test results, laboratory reports, notebooks, summaries of personal conversations or interviews, tapes and transcriptions of recorded personal conversations or interviews, diaries, appointment calendars, telephone message slips, minutes of meetings, reports or summaries of investigations, investigatory files, opinions or reports of consultants, appraisals, pamphlets, circulars, trade letters, press releases, graphs, manuals, brochures, projections, pleadings, court documents, and any non-identical drafts of the foregoing.

4

3.      The term "COMMUNICATIONS" means all inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, letters, correspondence, notes, telegrams, facsimiles, telexes, electronic mail, texts, tweets, posts, or other forms of written or verbal intercourse.

4.      The term "PERTAINING" shall be interpreted in the broadest sense to mean, directly or indirectly, in whole or in part, identifying, mentioning, discussing, describing, concerning, involving, regarding, reflecting, referencing, applying to, referring to, relating to, suggesting, intimating, evidencing, or constituting.

5.      The term "SLAPP SUIT" means the lawsuit filed in the Cumberland County Court of Common Pleas styled *Pennsylvania School Board [sic] Association v. Campbell, et al.*, Docket No. 2017-07303.

6.      The terms "AND" and "OR" shall be understood conjunctively or disjunctively, whichever makes the request, definition, or instruction more inclusive.

7.      The term "ANY" means any and all.

8.      The term "ALL" means each and every.

9.      The singular form of a word includes the plural and vice-versa.

## REQUESTS

1.     All documents reviewed by Nathan Mains in conjunction with verifying that the factual allegations of the initial SLAPP SUIT complaint were "true and correct to the best of [his] knowledge, information and belief."

2.     All documents reviewed by Nathan Mains in conjunction with verifying that the factual allegations of the amended SLAPP SUIT complaint were "true and correct to the best of [his] knowledge, information and belief."

3.     All documents considered by PSBA's governing board, or any one of them, in authorizing the commencement and prosecution of the SLAPP Suit.

4.     All documents considered by PSBA's governing board, or any one of them, in authorizing the filing of the amended SLAPP Suit complaint.

5.     All other documents reflecting or pertaining to information considered by PSBA's governing board in authorizing the filing of the commencement of the SLAPP Suit complaint and/or the filing of the amended SLAPP Suit complaint.

6.     All documents pertaining to or constituting contracts between PSBA and its member government entities with which Simon Campbell and/or PFUR is alleged to have interfered as claimed in the amended SLAPP Suit complaint.

7.     All documents reflecting or pertaining to any instance where a government entity terminated any contractual relationship with PSBA and/or reduced the scope and/or amount of any contractual relationship with PSBA as a result of any statement(s) or action(s) of Simon Campbell and/or PSBA.

6

8.      All documents constituting or pertaining to communications between PSBA and any school district and/or individual member of PSBA pertaining to any RTKL Request propounded by Simon Campbell and/or PFUR.

9.      All documents constituting or pertaining to communications between Nathan Mains and any third party pertaining in any way to Simon Campbell and/or PFUR.

10.      All documents constituting or pertaining to communications between PSBA and any school district and/or individual member of PSBA pertaining to any other communication between Simon Campbell and/or PFUR and any school district and/or individual member of PSBA.

11.      All documents constituting or pertaining to communications between PSBA and any school district and/or individual member of PSBA pertaining to any statement, image, video, or other media posted publicly on the internet by Simon Campbell and/or PFUR.

12.      All documents constituting or pertaining to internal communications within PSBA pertaining in any way to the statements or actions of Simon Campbell and/or PFUR.

13.      All drafts of emails constituting "guidance" to school district members of PSBA regarding responding to RTKL requests propounded by Simon Campbell and/or PFUR.

14.      All documents constituting or pertaining to communications between PSBA and any lobbyist concerning Simon Campbell and/or PFUR.

15.      All documents constituting or pertaining to communications between PSBA and any current or former elected legislator in the Commonwealth of Pennsylvania pertaining to Simon Campbell and/or PFUR.

16.      All documents constituting or pertaining to communications between PSBA and any law enforcement agency pertaining to Simon Campbell and/or PFUR.

7

17.     All documents constituting or pertaining to communications between PSBA and anyone concerning the commencement, maintenance, and/or prosecution of the SLAPP Suit.

18.     All documents constituting or pertaining to communications between PSBA and anyone concerning the passage of resolutions by member government entities calling for PSBA to discontinue the SLAPP Suit.

19.     All "blast" emails to PSBA's membership concerning Simon Campbell, PFUR, their statements and/or activities, and/or the SLAPP Suit.

20.     All drafts of "blast" emails to PSBA's membership concerning Simon Campbell, PFUR, their statements and/or activities, and/or the SLAPP Suit.

21.     All documents constituting or pertaining to internal PSBA communications concerning the content of "blast" emails to PSBA's membership concerning Simon Campbell, PFUR, their statements and/or activities, and/or the SLAPP Suit.

22.     All documents pertaining to PSBA's decision to send a blast email to PSBA's membership on October 16, 2017 containing a link to a PDF copy of the full content of the SLAPP Suit complaint.

23.     All documents in which Simon Campbell describes himself as an "anti-union, anti-public school and anti-privacy extremist" as alleged in paragraph 2 of the amended SLAPP Suit complaint.

24.     All documents constituting and/or pertaining to "warnings" from PSBA to Simon Campbell as alleged in paragraphs 3 of the amended SLAPP Suit complaint.

25.     All documents pertaining to the pronunciation and/or meaning of "****", including that "****" or "'****' off" has a "false" or "obscene" or "offensive" meaning as alleged in paragraphs 19 and 25 of the amended SLAPP Suit complaint.

26.     All documents constituting and/or pertaining to the factual allegations of paragraphs 37-39 of the amended SLAPP Suit complaint.

27.     All documents constituting or pertaining to communications with any law enforcement officer or agency concerning the communications by Simon Campbell as alleged in paragraphs 37-39 of the amended SLAPP Suit complaint.

28.     All documents constituting or pertaining to any law enforcement investigation concerning the communications by Simon Campbell as alleged in paragraphs 37-39 of the amended SLAPP Suit complaint.

29.     All documents constituting or pertaining to any prosecution of Simon Campbell concerning the communications by Simon Campbell as alleged in paragraphs 37-39 of the amended SLAPP Suit complaint.

30.     All documents constituting or pertaining to any civil or quasi-criminal proceedings concerning the communications by Simon Campbell as alleged in paragraphs 37-39 of the amended SLAPP Suit complaint.

31.     All documents pertaining to the allegations of paragraph 40 of the amended SLAPP Suit complaint that the communications by Simon Campbell as alleged in paragraphs 37-39 of the amended SLAPP Suit complaint was intended "to intimidate the PSBA staff member."

32.     All documents pertaining to the allegations of paragraph 40 of the amended SLAPP Suit complaint that the communications by Simon Campbell as alleged in paragraphs 37-39 of the amended SLAPP Suit complaint "constitutes a violation of Pennsylvania's harassment and stalking statutes pursuant to 18 Pa.C.S.A. Sec. 2709, 18 Pa.C.S.A. Sec. 2709.1(a)."

33.    All documents pertaining to the pronunciation and/or meaning of "*%$&@",
including that "*%$&@" or "*%$&@' off" has a "defamatory" meaning as alleged in
paragraph 42 of the amended SLAPP Suit complaint.

34.    All documents pertaining to the allegation in paragraph 46 of the amended
SLAPP Suit complaint that "the interests of the school district and PSBA were not in fact
conflicted in any way concerning Defendants' right to know requests."

35.    All documents pertaining to any inquiry or investigation by Michael Levin to
ascertain whether the interests of his school district clients in fact were in conflict with the
interests of PSBA with respect to RTKL requests of such school districts by Simon Campbell
and/or PFUR.

36.    All documents pertaining to any disclosure by Michael Levin to any of his school
district clients of potential conflicts of interest between such clients and the PSBA with respect
to RTKL requests of such school districts by Simon Campbell and/or PFUR.

37.    All documents pertaining to any request by Michael Levin to any of his school
district clients for a waiver of potential conflicts of interest between such clients and the PSBA
with respect to RTKL requests of such school districts by Simon Campbell and/or PFUR.

38.    All documents constituting or pertaining to communications between PFUR and
Michael Levin concerning the contents of "suggested guidance" to PSBA's members
"concerning right to know requests submitted to its members" as alleged in paragraph 47 of the
amended SLAPP Suit complaint.

39.    All documents constituting and/or pertaining to the communications from "public
school entity members" referenced in paragraph 67 of the amended SLAPP Suit complaint.

40.    All documents documenting or reflecting the existence of PSBA's ongoing contractual relationships with its members as alleged in paragraph 84 of the amended SLAPP Suit complaint.

41.    All documents reflecting or pertaining to the communications between PSBA and its members as alleged in paragraph 87 of the amended SLAPP Suit complaint.

42.    All documents substantiating or pertaining to the "substantial damages" suffered by PSBA as alleged in paragraph 88 of the amended SLAPP Suit complaint.

43.    All documents substantiating or pertaining to or quantifying PSBA expenditure of "significant time and money in responding to the many inquiries and requests from its members concerning" RTKL requests by Simon Campbell and/or PFUR as alleged in paragraph 94 of the amended SLAPP Suit complaint

44.    All documents pertaining to any claimed standing of PSBA to maintain an action for any alleged defamation of Michael Levin or Levin Law Group.

45.    All documents pertaining to any claimed standing of PSBA to maintain an action for any alleged defamation of Emily Leader.

46.    All documents pertaining to any claimed standing of PSBA to maintain an action for any alleged stalking or harassment of Emily Leader.

47.    All policies of insurance that may or potentially may provide coverage for the defense and/or indemnity of one or more of the defendants to this action, including, without limitation policies of general liability, school leaders legal liability, public entity liability, errors and omissions, and/or directors and officers insurance issued to PSBA and/or to the school districts of which the individual defendants are or were elected members during the time that

they serve(d) on the governing board of PSBA, and the homeowners insurance policies of each of the individual defendants.

48.    All correspondence between or among PSBA, the individual defendants, and/or the school districts of which such individual defendants are/were elected members, on the one hand, and any insurance carrier concerning the subject matter of the SLAPP Suit and/or this action, including without limitation all correspondence from insurers in whole or in part confirming the availability of coverage, denying the availability of coverage, and/or reserving rights under one ore more insurance policies.

49.    All retainer agreements between PSBA and any law firm, including the law firm of Bochetto & Lentz and Levin Law Group retaining such firms to prosecute the SLAPP Suit.

50.    All documents constituting or pertaining to the document and ESI retention and/or destruction policies and/or practices of PSBA.

51.    All documents reflecting or pertaining to correspondence between any individual defendant and the school district of which they are or were elected officials pertaining to Simon Campbell, PFUR, the SLAPP Suit and/or this action.

52.    Unredacted copies of all exhibits to the amended SLAPP Suit complaint.

53.    All documents documenting or pertaining to the way in which the redacted exhibits to the amended SLAPP Suit complaint came into the possession of PSBA and/or its counsel.

54.    All documents reflecting or pertaining to the creation, contents, and dissemination of Exhibit 12 to the complaint in this action, including without limitation the motivations and reasons therefor.

12

55.     All documents pertaining to the receipt, analysis, interpretation, and agreement and/or disagreement by PSBA with the contents of the report of PSERS Chief Counsel that is attached as Exhibit 13 to the complaint in this action.

56.     Documents sufficient to show itemized payments from PSBA to persons or entities (i.e., dollar amounts of payments and the name of each person or entity to whom the payment was made), between the dates of July 1, 2015 and June 30, 2016, that constitute the $534,787 expenses amount attributed to "Communications" on page 3 of PSBA's "Consolidated Financial Statements and Supplementary Information; year ended June 30, 2016 with independent auditor's report" (page 3 being subtitled 'consolidated statement of activities').

57.     Documents sufficient to show itemized payments from PSBA to persons or entities (i.e., dollar amounts of payments and the name of each person or entity to whom the payment was made), between the dates of July 1, 2015 and June 30, 2016, that constitute the $2,808,555 expenses amount attributed to "Member Services" on page 3 of PSBA's "Consolidated Financial Statements and Supplementary Information; year ended June 30, 2016 with independent auditor's report" (page 3 is subtitled 'consolidated statement of activities').

58.     Documents sufficient to show itemized payments from PSBA to persons or entities (i.e., dollar amounts of payments and the name of each person or entity to whom the payment was made), between the dates of July 1, 2015 and June 30, 2016, that constitute the $312,470 expenses amount attributed to "Legal" on page 3 of PSBA's "Consolidated Financial Statements and Supplementary Information; year ended June 30, 2016 with independent auditor's report" (page 3 is subtitled 'consolidated statement of activities').

59.     Documents sufficient to show itemized payments from PSBA to persons or entities (i.e., dollar amounts of payments and the name of each person or entity to whom the

payment was made), between the dates of July 1, 2015 and June 30, 2016, that constitute the $840,435 expenses amount attributed to "Governmental affairs" on page 3 of PSBA's "Consolidated Financial Statements and Supplementary Information; year ended June 30, 2016 with independent auditor's report" (page3 is subtitled 'consolidated statement of activities').

60.     Documents sufficient to show itemized payments from PSBA to persons or entities (i.e., dollar amounts of payments and the name of each person or entity to whom the payment was made), between the dates of July 1, 2015 and June 30, 2016, that constitute the $1,610,705 expenses amount attributed to "General" on page 3 of PSBA's "Consolidated Financial Statements and Supplementary Information; year ended June 30, 2016 with independent auditor's report" (page 3 is subtitled 'consolidated statement of activities').

61.     Documents sufficient to show itemized payments from PSBA to persons or entities (i.e., dollar amounts of payments and the name of each person or entity to whom the payment was made), between the dates of July 1, 2015 and June 30, 2016, that constitute the $4,541,859 expenses amount attributed to "Administrative" on page 3 of PSBA's "Consolidated Financial Statements and Supplementary Information; year ended June 30, 2016 with independent auditor's report" (page 3 is subtitled 'consolidated statement of activities').

62.     Documents sufficient to show itemized payments from PSBA to persons or entities (i.e., dollar amounts of payments and the name of each person or entity to whom the payment was made), between the dates of July 1, 2015 and June 30, 2016, that constitute the $68,254 expenses amount attributed to "Special activities" on page 3 of PSBA's "Consolidated Financial Statements and Supplementary Information; year ended June 390, 2016 with independent auditor's report" (page 3 is subtitled 'consolidated statement of activities').

63.    All applicable contracts, agreements, memoranda, or written understandings that exist between PSBA and attorney Michael Levin Esq. or the law firm Levin Legal Group ("Levin") for the provision of legal services to PSBA that were in effect in May 2017 in which Levin states the basis or rate of the fee that will be charged to PSBA as required by Rule 1.5(b) of the Rules of Professional Conduct for attorneys in Pennsylvania.

BY: /s/ Jacob C. Cohn
Jacob C. Cohn (PA I.D. 54139)
Joshua R. Slavitt (PA I.D. 63139)
Ilan Rosenberg (PA I.D. 89668)
Eric C. Rosenberg (PA I.D. 317144)
One Commerce Square
2005 Market Street, Suite 2900
Philadelphia, PA  19103
(215) 717-4004
jcohn@grsm.com
jslavitt@grsm.com
irosenberg@grsm.com
merosenberg@grsm.com

Mary Catherine Roper (PA 71107)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
Tel: (215) 592-1513 ext. 113
Fax: (215) 592-1343
mroper@aclupa.org

*Attorneys for Plaintiffs, Simon Campbell and Pennsylvanians for Union Reform*

Dated: March 28, 2018

15

## CERTIFICATE OF SERVICE

I, Jacob C. Cohn, hereby certify that on the date set forth below I caused to be served

Plaintiffs' First Set of Request for Production of Documents by U.S. First Class Mail, postage

prepaid, and via PDF and Microsoft Word email attachments upon the following:

> Michael I. Levin, Esquire
> David W. Brown, Esquire
> LEVIN LEGAL GROUP, P.C.
> 1301 Masons Mill Business Park
> 1800 Byberry Road
> Huntingdon Valley, PA 19006
> mlevin@levinlegalgroup.com
> dbrown@levinlegalgroup.com

Dated: March 29, 2018                    /s/ Jacob C. Cohn
                                         Jacob C. Cohn

1144707/37398336v.1                              16