# ROBERT H. DAVIS, JR.
ATTORNEY & COUNSELOR AT LAW
121 Pine Street, First Floor
Harrisburg, Pa. 17101-1209
Member: Pennsylvania, West Virginia & Georgia (inactive) Bars

Phones: (717) 238-6861 / (800) 401-6861 / Cell: (717) 580-8941      E-Mail: ethiclaw45@gmail.com

July 18, 2018

BY REGULAR U.S. MAIL & GMail
Michael I. Levin, Esq.
LEVIN LEGAL GROUP PC
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006-3525

Re: **Opinion re ethics of actions of Attorney Cohn, Esq. ;**
***Simon Campbell & PFUR v. PSBA et al.***
Case No. 2:18-CV-892-JD, U.S.D.Ct., E.D.Pa.

Dear Attorney Levin:

Thank you for asking my aid and opinion regarding the ethics of actions of Attorney Jacob Cohn and his law firm regarding your clients and others in the civil claim above-referenced and other related litigation. This letter contains my opinions, as an expert on attorney ethics, professional responsibility and, generally, the law of lawyering as applied to facts outlined in your firm's Motion to Sanction Counsel for Plaintiffs for Violations of the Rules of Professional Conduct to be filed in the matter above-referenced ("the Federal Action") as well as facts contained in the documents listed hereafter.

My qualifications for issuing this letter of opinion include my initial 21 years of law practice in which I first served as Assistant General Counsel and ethics prosecutor for the State Bar of Georgia of which bar I am now an Inactive member, then served as Bar Counsel to the West Virginia State Bar of which bar I am still a member and then as Deputy Chief and Acting Chief Counsel to the Disciplinary Board of the Supreme Court of Pennsylvania as a member of the Pennsylvania Bar. I have practiced an additional 24 years as a solo practitioner here in Harrisburg, PA with practice focused principally upon defense of attorney ethics, judicial ethics and governmental ethics charges as well as providing counsel to attorneys and others on issues of legal ethics, questions concerning professionalism and the law of lawyering. I have taught literally hundreds of continuing legal education courses in a number of states and have served as an Adjunct Professor at the Widener Commonwealth Law School in Harrisburg since the Fall Term, 1992, teaching Professional Responsibility and a seminar course on Advanced Problems of Legal Ethics. The opinions expressed in this letter are expressed to a reasonable degree of legal and ethical certainty based

EXHIBIT
D-165

upon my experience in the applicable area of the law, as well as upon such authorities as I will here discuss. My CV, reflecting my experience more thoroughly is attached to this letter for your information and that of the Court.

As indicated above, the focus of my opinions are the allegations of conduct and of failures to take appropriate action by Attorney Jacob Cohn in the above-reference Federal Action and a related State Court Action which will be discussed both generally and by specific reference below.

## Documents Reviewed in Preparing This Opinion Letter

As additional background for my opinions expressed here, I have reviewed the following:

(1) Amended Complaint PSBA filed against Simon Campbell ("Campbell") and Pennsylvanians for Union Reform ("PFUR"), No. 2017-07303, CCP Cumberland County, PA. ("the State Court Action")
(2) Preliminary Objections filed by defendants in the State Court Action.
(3) The Complaint filed by Campbell and PFUR against the Pennsylvania School Board Association and 10 of its current or former Governing Board Members, ("PSBA") in the Federal Action.
(4) Defendants' Answer and New Matter in the Federal Action.
(5) PSBA Bylaws as currently in effect and the version in effect in July 2017 when the State Action was filed.
(6) Selected portions of the 5/20/2018 Deposition Transcript of Faccinetto in the Federal Action.
(7) Selected portions of the 5/29/2018 Deposition transcript of Kathy Swope in the Federal Action.
(8) Email of Jacob Cohn to solicitors dated May 13, 2018 [Exh. D-39]
(9) Email of Jacob Cohn to solicitors dated May 15, 2018 [Exh.D-40]
(10) Email of Jacob Cohn to solicitors dated May 16, 2018 [ Exh. D-41]
(11) Email of Jacob Cohn to solicitor dated May 15, 2018 [Exh. D-55]
(12) Email communications of Jacob Cohn with King Spry Herman Freund and Paul, [Exhs. D-57, D-58 and D-60]
(13) Email communications with Attorney Cassidy, [Exh. D-59]
(14) Email communications of Jacob Cohn with Michael Kristofco of May 11 and May 23, 2018. [P-205].

## Applicable Rules and Standards Used in This Expression of Opinion

In my discussion of the Rules of Professional Conduct here, I will be referring to the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by that court, as adopted by U.S.

2

Eastern District Local Rule of Civil Procedure 83.6. Rules of Attorney Conduct, Part IV(B). The authority of the Eastern District Court to take appropriate remedial and disciplinary action that I mention here has been recognized as part of the inherent powers of a federal district court to discipline lawyers appearing before it; the District Court has the ability to prohibit or remedy litigation practices which constitute ethical violations upon proper showing. University Patents, Inc. v. Kligman, 737 F.Supp. 325 (E.D. Pa. 1990), Belote v. Maritrans Operating Partner, L.P., 1998 WL 136523 (E.D. Pa. 1998) Jordan v. Philadelphia Housing Authority, 337 F.Supp. 2d 666, 671 ( E.D. Pa. 2004).

## Opinions Held and Reasons and Authorities in Support

Based upon my review and consideration of the materials listed here, I have come to the conclusion that that actions of Attorney Jacob Cohn in summary, constitute clear and significant violations of Rules 3.4, 4.1, 4.2 and 8.4, Pa. Rules of Professional Conduct, 42 Pa.C.S. The specific reasons and authority for these conclusions are as follows.

A. Violation of Rule 4.2, Pa.R.P.C.

The most serious examples of improper conduct on the part of Attorney Cohn are found in the collective series of contacts with various counsel for school districts which were members of the PSBA or which were the home districts of persons who served as Governing Board Members of the PSBA at the time the State Action was filed or while the defense of the Campbell-FRUR Federal Action continued.

Rule 4.2 serves a critically important role in assuring the fairness of legal proceedings, seeking to assure that parties to legal matters will have access to the advice of counsel without the overreaching and confusion that contacts by opposing counsel would necessarily involve. Rule 4.2 establishes a mandatory duty upon attorneys in a representation as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa.R.P.C. 4.2, 42 Pa.C.S.

The reason for the policy of non-contact with a represented party is expanded upon in the initial Comment to the Rule:

3

>[1] This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer communication relationship and the uncounseled disclosure of information relating to the representation.

Pa.R.P.C. 4.2, Cmt. [1] 42 Pa.C.S.

Specific language in Comment [4] to Rule 4.2 also makes clear that the contact which is prohibited cannot be made for the attorney through the participation of another. This clarification reflects the policy stated in Rule 8.4(a), Pa.R.P.C. that a lawyer may not violate a Rule by assisting or inducing another to do so or through the acts of another. This provision is important here, as Attorney Cohn made improper contacts claiming that such contact with local school district counsel for the parties was appropriate while in fact circumventing Attorney Levin, clearly the formal counsel to the parties sued as individuals and when the clients of the attorneys contacted, the various school districts from which PSBA Board members had been drawn, were not parties to either of the two proceedings in which the PSBA and its Directors were involved. In these contacts Attorney Cohn gave specific advice and made specific demands and threats relating to the individual defendants in the Federal Action through a purported series of "demand" emails, the nature of which showed their true purpose, the intimidation of the individual defendants in the Federal Action.

In his May 13, 2018 email Cohn clearly stated the communication was sent because the recipients were Solicitors of the school districts for which the individual defendants in the Federal action are or were board members. [Exh. D-39] Of critical importance, this email was not copied to Attorney Levin,[1] attorney of record for the Governing Board Members who were the focus of the discussion in the May 13th email. While purporting to be a legitimate contact with a potential opposing party with "legal exposure," the plain effect of the communication was an attempt cause individual school districts – the home districts of the Federal Action defendants to pressure the individual school districts to, in turn, pressure the individual PSBA Governing Board member to "cause the PSBS to dismiss the SLAPP Suit [State Action] with prejudice or cause the removal of that school board Member from PSBA's Governing Board by discontinuing that district's own entity membership in PSBA – which ... would automatically disqualify the district's director from further service on the Governing Board". The email ends with another threat: "Those who act swiftly to do everything in their power to

---

[1] Indeed, as discussed subsequently, Mr. Cohn expresses annoyance when he discovers that someone sent his emails to Mr. Levin.

4

cause the prompt dismissal of the SLAPP [State Action] Suit and disavow their prior ratification of their own director's unconstitutional actions under color of state law may expect to be able to negotiate far better settlement terms than those districts that continue to ratify and support PSBA's SLAPP suit and their own directors' role in continuing PSBA's First Amendment retaliation against my clients." This is a patent attempt, disguised as a proper contact with "opposing parties' counsel", at an end-run around counsel of record for PSBA and the individual Defendants in the Federal Action and around Rule 4.2's clear requirement protecting the individual defendants in the Federal Action.

In fact, at the time Attorney Cohn sent the May 13th email none of the school districts were parties to either the State Action or Federal Action, nor did they have then-current institutional interest in either litigation. The thrust of the May 13th email is clear – to pressure the individual Defendants in the Federal Action to withdraw their support from the strategy and legal positions then being advanced by their counsel of record. This clear threat against the individual districts for the clear purpose of pressuring the individual defendants, who were not under control of, nor did they represent, the school districts in the State Action, is an ethically improper attempt to communicate the threats of Campbell and PFUR through the intermediary solicitors, whom they surely knew would communicate the positions, demands and threats to each of the school districts and to the individual defendants. Rule 4.2, as elucidated by its Comments [1] and [4] positively prohibits such contacts.

Although there is very little authority available generally, on Pa.R.P.C. 4.2 violations, it is clear that such improper contacts such as the May 13th email of Attorney Cohn have been condemned as unethical by Pennsylvania Courts Sutch v. Roxborough Memorial Hospital, 151 A.3d. 241, Super. (2016), app. den. 169 A.3d 1065 and the Disciplinary Board of the Supreme Court of Pennsylvania since the early days that the present version of the Rules of Professional Conduct came into effect. In re Anon. No. 24 DB 91, 13 Pa. D.&C. 4th 103; In re Anon. No. 49 DB 90, 14 Pa. D.&C. 4th 50 (1991); In re Anon. No. 33 DB 93, 31 Pa. D.&C. 4th 262 (1995). To the extent that improper contact with an opposing party also involves misstatements of fact, violative of Pa.R.P.C. 4.1 [false statements of material fact to a third person during a representation] and Pa.R.P.C. 8.4(c) [dishonesty or misrepresentation], the Rule 4.2 violation is considered more serious. In re Anon No. 33 DB 93, supra.

Not to be overlooked or minimized, the personal attacks of Attorney Cohn upon counsel in the May 13th email and in later emails, is also violative of the Code of Civility adopted by the Supreme Court of Pennsylvania on December 6, 2000. Specifically, Art. II. 1., 2., 5. and 6., The Lawyer's Duties to the Court and to Other Lawyers, which provide as follows:

5

1. A lawyer should act in a manner consistent with the fair, efficient and humane system of justice and treat all participants in the legal process in a civil, professional and courteous manner at all times. These principals apply to the lawyer's consult in the courtroom, in office practice and in the course of litigation.
2. A lawyer should speak and write in a civil and respectful manner in all communications with the court, court personnel and other lawyers.
...
5. ***A lawyer should abstain from making disparaging personal remarks or engaging in acrimonious speech or conduct toward opposing counsel*** or any participants in the legal process and shall treat everyone involved with fair consideration.
6. A lawyer should not bring the profession into disrepute by making unfounded accusation of impropriety or personal attacks upon counsel and, absent good cause, should not attribute improper motive or conduct to other counsel.

Pa. Code of Civility 42 Pa.C.S. (Emphasis added)

      Although the May 13th email of Attorney Cohn to the school solicitors is sufficient to establish unethical activity and unprofessional conduct, such improper conduct was compounded as he sent later communications. On May 15, 2018 Attorney Cohn sent an email [Exh. D-40] to the same group of solicitors which overstepped boundaries of professionalism in that Cohn disparaged counsel for the Federal Action defendants, Attorney Levin, as professionally incompetent, accused him of making "nonsensical filings" and of engaging in "obstructionist discovery tactics". Levin's defense strategy is described by Cohn as a "crazy train". Attorney Cohn has also suggested by this time that Attorney Levin's representation of both the PSBA and the individual Federal Action Defendants is an improper conflict of interest. Attorney Cohn plainly states the clear goal of the May 15th Cohn email as he directly suggests to the school solicitors that Attorney Levin should not continue to be the counsel for their purported interests and urges, in a clearly-threatening manner, that the Boards have someone with settlement authority to contact him. The contacts continue quickly after the May 15th email of Attorney Cohn. On May 16th Attorney Cohn directed yet another email [Exh. D-55] to the School District Solicitors, no copy to Attorney Levin, which expressed his irritation, illogically, that his prior emails had, been forwarded to PSBA and shared with School Districts and the individual Federal Action defendants and continued his threats of litigation and retaliation.

6

The material supplied to me also contains a variety of May 2018 emails Attorney Cohn sent to Attorneys John Freund, II and Donald Spry, II of the King Spry firm in late May of 2018 [Exhs D-57, D-58 and D-60]. Again, no copy was sent to Attorney Levin. The King Spry firm is Solicitor to Northwest Lehigh School District (on which Defendant Schafer services) and Bethlehem School District (on which Defendant Faccinetto serves). In those email a familiar theme and familiar approach is detected. Attorney Cohn threatens to sue the School Districts on the claim of their alleged "ratification" of the State Court Action simply because their Board Members also serve on the PSBA Governing Board. Continuing his personal attacks on opposing counsel, Attorney Cohn's May 29th email [Exh. D-60] refers to individual Federal Action defendant Michael Facinnetto's lawyer, Susan Weiner, as "literally clueless". In another such contact of which I have been advised – a late-May, 2018 contacts of Attorney Cohn to Michael Cassidy, Esq., Solicitor for Cumberland Valley School District. [D-59] - Attorney Cohn continues the tactic of making a threat to sue the School District based upon the District's alleged "ratification" of the State Court Action. Again, PSBA Board of Directors member Gossert's recent addition to the PSBA Board is used to argue for action by the School District to alter its relationship with PSBA. The emails also continue disparagement of the legal services PSBA counsel Attorney Levin is providing his clients, by claiming that Levin has given his clients bad advice and that his actions are motivated by his alleged personal hatred of Simon Campbell.

In yet another email of Attorney Cohn to school solicitors [Exh. D-80], threats of litigation are repeated, including a new threat of Dragonetti claims. Yet again, no copy of this email was sent to Attorney Levin. While disclaiming present willingness to negotiate with individual school districts on the claims Campbell and PFUR claim to have, the familiar theme of impacting the defense in the Federal Action emerges as Attorney Cohn once again urges districts to cancel their PSBA memberships for the purpose of preventing the District's Board member from serving on the PSBA's Governing Board.

Finally, Attorney Cohn has, in the course of deposing witnesses Faccinetto and Kathy Swope, on May 29th and 30, 2018, made direct and unethical statements disparaging of the firm of Bochetto & Lentz, which firm represents the PSBA in the State Tort Action. Specifically, Attorney Cohn has utilized the discovery process to attack Bochetto & Lentz, characterizing the firm as not well-respected, as "unethical", "bullies", not scholarly, as "extra nasty", as having a practice of suing people for exercising First Amendment rights, and that they are a hired gun retained merely to "teach Simon Campbell a lesson." (Faccinetto Dep. Pp. 70,155, 156, 157, [Exh. D-69], Swope Deposition, Pp. 119, 120). Cohn even goes so far in his questioning of Mr. Faccinetto to imply that the Court agrees

7

with Mr. Cohn's descriptions of Bochetto & Lentz. (*See*, Faccinetto Dep. pp. 154-155, Exhibit D-69 )

B. Violation of Rule 3.4 Fairness to Opposing Party and Counsel

The preceding detailed discussion of facts relating to the series of emails sent by Attorney Cohn to various counsel also provides a basis to conclude that such conduct violated an additional Rule of Professional Conduct – Rule 3.4(a):

> Rule 3.4 Fairness to Opposing Party and Counsel
> A Lawyer shall not:
>
> (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act.
> ...

Pa.R.P.C. 3.4, 42 Pa.C.S.

In the preceding discussion I have noted the list of communications that Attorney Cohn directed to counsel for the School Districts from which the individual Federal Action defendants came. Again, the clear intent of those communications, none of which copied Attorney Levin, was to seek to assure that the school districts would discourage further participation of the Federal Action defendants in the prosecution of the State Action against PFUR and Campbell and to generally discourage their support for the defense of the Federal Action by withdrawal from PSBA or by asserting plain refusal of the Federal defendants or their related School Districts from providing valuable information in the Federal Action, including providing critical information about the exact history of the decision of PSBA, though its Governing Board, to pursue its claims against PFUR and Campbell. Such conduct can be fairly characterized as an attempt by Attorney Cohn to discourage witnesses, i.e. the individual Federal Action defendants and their home school districts to cooperate with the defense being pursued by Attorney Levin.

In my opinion, such conduct, done as part of a clear campaign to do an "end run" around Attorney Levin and threaten financial consequences to school districts and embarrassment to individual Federal Action Defendants amounts to obstruction of the Federal Action defendants' access to evidence. It is unlawful as the conduct discussed here also violates Rule 4.2 and other Rules, as explained above. Such action has complicated the defense in the Federal Action and, as noted above, has had the effect of actual discouragement of at least one school district in the defense of the Federal Action and of the PSBA Governing Board

8

member from that district. Such is unreasonable and highly unethical and a violation of Rule 3.4. <u>Sutch v. Roxborough Memorial Hospital</u>, 151 A.3241 (Pa. Super. 2017). I have been advised by you that Mr. Cohn's efforts have, in fact, been successful in depriving the Defendants of a witness as one of the solicitors declined to provide an affidavit to you due to the emails Mr. Cohn sent.

C. Violation of Honesty, Candor, Respect for Justice Rules 4.1, 8.4(c) and (d)

Discussions of the content of the emails above also includes examples of Attorney Cohen's violation of Rules of Professional Conduct which forbid dishonest or misleading filings or statements in the actions of an attorney during all aspects of litigation. The impact of the actions constitute prejudice to the administration of justice as envisioned in Pa.R.P.C. 8.4(d).

To the extent that the statements of Attorney Cohn in the numerous detailed contacts outlined above constitute false statements of material fact or law to a third person during litigation of the State or Federal Actions, such constitute violation of the ethics honesty standard announced in Rules 4.1 and 8.4(c), Pa Rules of Professional Conduct.

Rule 4.1 Truthfulness in Statements to Others

In the course of representing a client a lawyer shall not knowingly:
(a) make a false statement of material fact or law to a third person; or
...

Pa.R.P.C. 4.1, 42 Pa.C.S.

Comment [1] expands upon the duty of truthfulness announced by Rule 4.1:

[1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has not affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows to be false. Misrepresentations can also occur by partially true but misleading statements or omission that are the equivalent of affirmative false statements. For dishonest conduct that does not amount to a false statement or for misrepresentations by a lawyer other than in the course of representing a client, see Rule 8.4.

Pa.R.P.C. 4.1, Cmt [1], 42 Pa.C.S.

9

A more widely-applicable rule of basic honesty in all activities of attorneys and a rule aimed at integrity of the justice system are stated in Rules 8.4 (c) and (d), Pa. Rules of Professional Conduct:

> Rule 8.4 Misconduct
> It is professional misconduct for a lawyer to:
> ...
> (b) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
> ...
> (c) engage in conduct prejudicial to the administration of justice;
> ...
> Pa.R.P.C. Rules8.4(c) and (d), 42 Pa.C.S.

Of great importance on the issue of fundamental honesty is the fact that Attorney Cohn's "end run" around Attorney Levin, as illustrated by the above discussion of this various emails and actions, exceeded the proper bounds of legitimate advocacy and was dishonest, was an attempt improperly to intimidate the Federal Action defendants and was a disservice to the justice system both in concept and execution, thus a violation of Rules 8.4 and Rule 4.1. Further Attorney Cohn's characterization of opposing counsel and their work product dishonestly to those sure to report such facts to their clients, clients of Attorney Levin, in an ongoing representation offends the spirit and letter of these rules. Such unprofessional and uncivil claims, in addition to being false, are material misstatements of dishonest and misleading nature. Their materiality is especially clear, as the statements are plainly aimed at bringing to the clients of those counsel who are criticized that their counsel are unethical or lack basic competence or have acted out of personal animosity toward the opposition and cannot be trusted to protect the interests of clients – all of which have a clear potential to undermine the lawyer-client relationship.

As for the violation of Rule 8.4(d), the facts show that Attorney Cohn and his firm have engaged in clear violations of accepted practice norms, In Re Anon. No. 22 DB 88, 14 Pa.D.&C. 4th 74 (1991), that their actions are not the merely distasteful actions of a maverick but violate the ethics rules and in so doing have inflicted harm on their client or have been abusive of the rights of other litigants, lawyers, judges or the legal system, In re Anon. No. 43 DB 77, 10 Pa.D.&C.3d 637 (1979) and that there has been an impact of such actions directly impeding the efficiency of the judicial system. In Re Anon. No. 103 DB 89, 13 D&C 4th 238 (1991). The actions of Attorney Cohn have caused involved parties and those not presently involved to obtain additional counsel and have caused the Federal Action Defendants to seek protection from the unusual and improper actions of Attorney Cohn through the existing Motion for Sanctions, and have, in violations

of Rule 3.4, actually interfered directly in the relationship between Attorney Levin, as counsel for the Federal Action defendants, and those who are natural and necessary allies in the defense, thus unnecessarily utilizing their time and resources and, as a consequence, that of the United States District Court, Eastern District of Pennsylvania.

## Conclusion

Upon the discussion and the authorities above, it is my opinion that in engaging in the actions complained of in the Motion for Sanctions in the Federal Action, Attorney Cohn has engaged in clear violations of the Pa Rules of Professional Conduct, as made applicable to proceedings in the U.S. District Court, Eastern District of Pennsylvania, pursuant to the provisions of U.S. Eastern District Local Rule of Civil Procedure 83.6. Rules of Attorney Conduct, Part IV(B). I hasten to add the clarification that in this opinion I express no opinion of misconduct or unethical conduct as to any actions or statements of Attorney Cohn's co-counsel in the Federal Court Action, the ACLU, and particularly its counsel MaryCatherine Roper.

If, upon further investigation you find other facts or documents that may have some impact upon the issues and Rules of Professional Conduct discussed here, I urge you to provide them to me, as I welcome the opportunity to give additional consideration to my opinion expressed here.

## Compensation and C.V.

I have attached my Curriculum Vitae and I here disclose that I am being compensated for this opinion.

Very truly yours,

*Robert H. Davis, Jr.*

Robert H. Davis, Jr.

Enc: Curriculum Vitae

cc: David Brown, Esq.

Craig Ginsburg, Esq.

11

# ROBERT H. DAVIS, JR.

*Attorney & Counselor at Law*
121 Pine Street, First Floor
Harrisburg, Pa. 17101-1209
*Member: Pa., W. Va. and Georgia (inactive) Bars*
(717) 238-6861 / (800) 401-6861          E-Mail: ethiclaw45@gmail.com

## CURRICULUM VITAE OF ROBERT H. DAVIS, JR.

Present Employment: Solo Practice of Law
121 Pine Street, First Floor
Harrisburg, Pa. 17101 - 1209

Education:    Vanderbilt University - B.A. 1967
University of Georgia Law School - J.D. 1972
three-year Vasser Wooley Scholar and President
of Athens Legal Aid and Defender Clinic.

Work and Professional Experience:

**Peace Corps** - Secondary School Teacher, Government Secondary School, Jimi, Bagbo Chiefdom, Southern District, Sierra Leone, West Africa, 1967-1969.

**Augusta Office, Georgia Indigents Legal Services** - Summer, 1971 and February and June 1972. (A Founder)

**Associate of D. Landrum Harrison** - Augusta, Georgia, June 1972-January 1973, General practice of law.

**State Bar of Georgia** - Assistant General Counsel, February 1973 to January 1980.
I was the first person to serve full-time as Assistant to the General Counsel of the State Bar of Georgia. In addition to playing a significant role in modernizing Georgia ethics rules at the invitation of the Georgia Supreme Court, I had responsibility for case preparation and UPL and ethics prosecution for the entire state of Georgia. I tried (and won) the first modern-day ethics jury trial in Georgia and tried the first ethics hearing open to the public in Georgia. I also made numerous presentations on ethics and practice management to the bar during the period of my service.

**The West Virginia State Bar** - Bar Counsel, 1980 to September 1986.

In April 1983 the West Virginia State Bar presented me the Award of Merit, its highest award, for my service as their counsel, for my work nationally, including presidency of the NOBC and work with the Conference of Chief Justices and work with the ABA Young Lawyers Division and in West Virginia to urge bar involvement in substance abuse interventions. I advised and represented the Bar of West Virginia as General Counsel,

-1-

including ethics and UPL prosecutions and in other litigation. I also handled insurance, employment and contract problems which arose. I was principal draftsman of revised and updated disciplinary rules for West Virginia lawyers and was appointed by Chief Justice Thomas Miller to review and recommend improvements in West Virginia's judicial discipline system. My recommendations for change resulted in significant improvement of the procedures, staff support and credibility of the judicial ethics effort in West Virginia. I wrote and spoke frequently on legal ethics and practice management issues while I served as Bar Counsel.

### Disciplinary Board of the Supreme Court of Pennsylvania

Deputy Chief Counsel September 1986 to August 28, 1992.
Acting Chief Counsel November 1990 to February, 1992.

I supervised, alone and cooperatively with Chief Counsel, a staff of twenty-two lawyers, ten investigators and supporting clerical workers. The Board maintained four district offices, with the Harrisburg office as the administrative center for the system. Major case and litigation supervision (including critique of strategy and of draft pleadings), budgeting, employee supervision and evaluation, personal litigation involvement and rules drafting are some of the duties listed in the job descriptions for Chief Counsel and Deputy Counsel. At the same time I continued my efforts to improve various areas of law practice in Pennsylvania by active participation on Committees of the Pennsylvania Bar Association.

### Solo Practice of Law, Harrisburg, PA.

November, 1992 to present.

Since leaving the Disciplinary Board of the Supreme Court I have engaged in solo practice of law from offices located in Harrisburg, Pa. The practice I engage in is quite varied but increasingly the primary focus is upon advising lawyer, judicial and governmental respondents in Pennsylvania and West Virginia as to defense of ethics charges, provision of ethics advisory opinions to lawyers, government officials and businesses in both jurisdictions and the teaching of ethics to members of the bar and to law students.  The practice began as a general practice including minor criminal matters, basic wills, simple real estate transactions, representation of nonprofit corporations, disputes over lost dogs and contract dispute representation as well as service as an expert witness in matters relating to legal malpractice or questions of ethics and disqualification in Pennsylvania Common Pleas and federal district courts as well as state courts in New York, Ohio, Texas and West Virginia.  I have served a two-year term as a member of an arbitration panel for the Dauphin County Court of Common Pleas. By 1997 my practice began to focus almost exclusively on consultation with clients on ethics/malpractice avoidance questions, defense of lawyer and judicial and governmental ethics charges and occasional service as an expert witness.

<u>Bar Memberships</u> - The State Bar of Georgia, 1972 (inactive since 1981); The West Virginia State Bar, since 1980; Pennsylvania Bar since 1986, Pa. Bar Association (Professionalism Committee Subcommittee Chair; Professional Liability Committee Co-Chair, 2007; Lecturer, Malpractice Avoidance Effort of the Professional Liability Committee; Recipient of two PBA Special Achievement Awards, May 1992, and April 2002, for writing PBA Response Plan for Mass Disasters and work on the PBA Client and Community Relations Committee; Chair (2000-2003) and Vice-Chair (1998-2000) of the Client and Community Relations Committee; James Bowman American Inn of Court (elected Master, 2001; Treasurer 2006 - 2010); National Organization of Bar Counsel [NOBC] (Pres.'83-'84; Chaired NOBC Committees to evaluate National Discipline Data Bank, 1991 and was the reporter for the NOBC critique of the A.B.A. Kutak Committee Report, 1982; directed annual nationwide salary survey for disciplinary agencies, NOBC; Association of Professional Responsibility Lawyers [APRL]; American Bar Association [Fellow, American Bar Foundation, 2009].

<u>Teaching Positions:</u> - Adjunct Professor of Law, Widener University School of Law-Harrisburg Campus, teaching Professional Responsibility and an Advanced Ethics Problems Seminar [Fall of 1992 - present]; Recipient of the Widener Law School's Adjunct Faculty Distinguished Service Award, 2/2004; course moderator/presenter in mandatory Continuing Legal Education courses in ethics presented statewide by the Pennsylvania Bar Institute and the Pennsylvania Bar Association (well over 125 at last count), West Virginia Continuing Legal Education, as well as for the Bowman Inn, American Inns of Court, Philadelphia Bar Education Foundation, the American Bar Association's Business Law Section, Pennsylvania Defense Institute, Pennsylvania Criminal Defense Lawyer's Association, the Pennsylvania Trial Lawyers' Association, the New Jersey Bar Institute, American Conference Institute, of New York, NY, the mandatory Bridge-the-Gap sessions established by the Pennsylvania Supreme Court (as both author of materials and presenter) and Widener Law School CLE. In many of the teaching assignments relating to continuing legal education, I prepared, co-authored or revised the teaching materials used in the sessions I taught.

<u>Publications of which I am the Principal Author or Editor and Contributor</u>
During my twenty-one years of service as a bar counsel or ethics counsel to three states and as an ethics prosecutor, I did not write more than one or two articles which were published and none were published in the last ten years of that service. However, since entry into private practice one of the focuses of my practice has been practical education of lawyers on ethics and malpractice issues. In that capacity, I have written materials most of which were created for a number of Continuing Legal Education [CLE] providers, a representative list of which writings follows:

— Materials - <u>Views From the Arena - Some Practical Lessons and Rules on Conflicts</u> - Course materials presented in New York, NY in March of 2001 and San Francisco,

-3-

CA in June of 2001 for the American Conference Institute ethics portion of the program: "Patenting: Genomics and Proteomics."

Materials - Attorney Advertising Ethics - Presentation to the annual meeting of the Pennsylvania Association of Trial Lawyers, Hershey, PA. July 6, 2001 and Auto Law Seminars of PaTLA in December of 2001 in Harrisburg and Allentown, PA. and, in upgraded form, to accompany an hour-long video presentation for PaTLA recorded in the summer of 2004 for statewide use.

Conflicts of Interest in the Non-Litigation Context: article: "Some Practical Lessons from the Real World" - Panel Presentation - American Bar Association Section of Business Law Midyear Meeting, Philadelphia, Pa., March 24, 2001.

- Materials - <u>Fiduciary Requirements for Lawyers in Pennsylvania - Handling Property of Clients and Others</u>, these course materials were prepared in the summer of 2000 with Samuel Miller, Esq. and Edwin W. Frownfelter, Esq. for use in 2001 in the Supreme Court mandatory "Bridge the Gap" seminar for candidates for the Pennsylvania Bar.

- Article, "Supreme Court Announces New Disciplinary Enforcement Rule" <u>Pennsylvania Bar News</u>, March 19, 2001, p. 9. Alerting bar to new Pa.R.D.E. Rule 217(j) restrictions on law-related work by suspended and disbarred counsel.

- Article , <u>Trust Accounts - Handle With Care</u>, September, 1994 issue of <u>The Pennsylvania Lawyer Magazine</u>, page 40. This article has also been published in West Virginia and in the Pennsylvania CPA Association statewide magazine as well, I understand.

Article - "Using Lawyer-Experts in Financial Litigation (Part I)," Vol. 14, No. 3, <u>The Practical Litigator</u>, ALI/ABA, May, 2003.

Article - "Using Lawyer-Experts in Financial Litigation (Part II)," Vol 14, No. 4, <u>The Practical Litigator</u>, ALI/ABA, July, 2003.

- Article - "Notary Best Practice" - Vol. XXI, Issue 3, <u>Facts & Findings, The Journal for Legal Assistants</u>, November, 2004.

Book - <u>The Hornbook on Developing & Maintaining Positive Client Relationships</u> - I was a principal editor of, and contributor to, the first edition of this highly successful PBA publication, first printed and released in early 1998, which provides guidance to bar members on building and maintaining positive client relationships.

- Pamphlet - Chair of drafting group, with Samuel Miller, Esq. and Edwin R. Frownfelter, Esq., of the pamphlet <u>Fiduciary Requirements for Lawyers in Pennsylvania</u>, 1997, published and widely distributed to members of the Pennsylvania Bar by Pennsylvania Interest on Lawyer Trust Accounts Board and the Pennsylvania Bar Association. This pamphlet was revised and expanded in 2000 by

-4-

the same drafting group for the Supreme Court's "Bridge the Gap" seminars for new lawyers, starting in 2001, mentioned above.

- Article, "All DUI's Look Uglier at Quittin' Time", Vol. 10, No. 2, 1998, <u>PACDL Forum</u>, the magazine of the Pennsylvania Criminal Defense Lawyers' organization, describing the impact of a DUI conviction on a lawyer's Pennsylvania law license.

-Materials - Trust Accounting Basics, course materials for August 11, 1993 Widener University Law School CLE program in Philadelphia, Pa. This same program has also been presented, in updated version, to lunch and learn programs of the Dauphin County Bar Association, Harrisburg, Pa. It was since taught on a number of occasions and revised, under the auspices of the Pennsylvania Bar Institute and some sponsoring local bar associations. In the summer of 1996 an expanded version of this presentation was created for the New Jersey Continuing Legal Education Institute and was utilized at two programs presented in New Jersey for lawyers jointly licensed in New Jersey and Pennsylvania.

-Materials - Avoiding Neglect Problems/ Identifying Dangerous Files - This program and related materials developed by me has been given in various forms under the auspices of the Pennsylvania Defense Institute, ( initially at Rosemont College, 12/5/1992), Philadelphia Bar Institute, Pennsylvania Bar Institute, (various locations), West Virginia Bar CLE, (2/27/1993, Canaan Valley Resort, WV) Widener University Law School CLE (8/11/1993), James F. Bowman American Inn of Court (April, 2001, Harrisburg, PA) and the Dauphin County Bar Association. This presentation has been given many times around the state of Pennsylvania as a part of the malpractice avoidance effort of the Pennsylvania Bar's Attorney Liability Insurance Committee malpractice avoidance programs to law firms in-house and as a stand-alone program for local bar associations.

- Materials - A Lawyer's Duty to His Client vs. His Duty of Candor to the Court - First developed for presentation March 25, 1993 at a Widener University Law School CLE program in Hershey, Pa., this presentation has been given under those auspices and numerous other times under the auspices of the Pennsylvania Bar Institute and sponsoring local bar groups to various bar groups, including the Pennsylvania Bar Association Midyear Meeting, Williamsburg, Va., 1/10/1994 and the Dauphin County Bar.

- Materials - Ethics Dangers of Scorched Earth Litigation Tactics: Use of Misrepresentation and Capitalizing on Mistakes of Opponents - for the February 2, 1995 meeting of the National Association of Railroad Trial Counsel, Naples, Fla. Repeated as PBI course, Philadelphia, May 10, 1995, and on other occasions after revision.

- Materials - The New Rules of Lawyer Advertising - For the Pennsylvania Bar Institute program for new lawyers, August, 1994, at Bucknell University, Dauphin County Bar Association (1/10/1995) and repeated for the Pennsylvania Trial Lawyers annual meeting, July 6, 1995 and at Bucknell, August 3, 1995 and West

       Conshohocken, Pa. November 10, 1995. The program was updated and presented under the sponsorship of the Pennsylvania Bar Institute, most recently in the fall of 1999 in Mechanicsburg, and was given in early Fall of 1998 for the Bench-Bar retreat of the Berks County Bar Association. These course materials, in updated form, were also selected as part of the first mandatory "Bridge the Gap" orientation to be given to candidates for admission to the Pennsylvania bar in the summer of 2001 and are the basis of a presentations made to the Pennsylvania Trial Lawyers Association Meetings in July of 2001 and December of 2002.

- "Ethics Jeopardy" - Materials and video vignette scripts - Written and produced about 2005, based upon an earlier set of vignettes produced and presented a number of times, including statewide in PA via satellite, the second series of five "ethics jeopardy" vignettes has been presented in numerous venues, including, most recently, twice in WVU CLE Mountaineer Series presentations in 2008 and 2009, as well as a PBI presentation on ethics in Atlantic City, NJ, various bar association annual meetings and at the initial PBI series of presentations.

- Materials - A Primer on Retainers Non-Refundable and Otherwise - Annual Meeting of Pennsylvania Trial Lawyers' Association, Hershey, Pa., July, 1994, Dauphin County Bar (12/9/1994).

- Materials - Law Firm Responsibility: Supervisor-Subordinate Relations and Duties - Oct. 2, 1992, Hershey, Pennsylvania for Widener Law School CLE effort.

- Materials - Corporate Counsel Ethics - PBA Midyear Meeting, Baltimore Md., 1993.

- Materials - Ethics of Client Communication and Counseling - PBI program, Harrisburg, Pa, December 1994.

- Materials - Ethics of Bond Counsel Representation - PBI program, June, 1993, Hbg, Pa., repeated summer of 1999, Philadelphia, PA.

- Materials - Playing a Dangerous Game: Misrepresentation, Mistakes of Opponents, Spoliation and Discovery Abuse in Litigation - For August 21, 22, 1995, PBI Program on Crashworthiness, Rollovers, What is Wrong With Automobiles ? Seminars in Pittsburgh and Philadelphia, Pa.

- Materials - Ethics in Civil Practice 2000 (January, 2000) , Ethics in Civil Practice 2001 (January 2001), Ethics in Civil Practice 2002 (January 2002), Ethics in Civil Practice 2003 (March 2003), Ethics in Civil Practice 2004 (March 2004) Ethics in Civil Practice 2005 (March, 2005) Ethics In Civil Practice 2006( March, 2006) Ethics in Civil Practice 2007 (March 2007)Ethics in Civil Practice 2008 (February/March 2008) Ethics in Civil Practice 2009 (February/March 2009) - an ethics presentation during the annual program of the Pennsylvania Bar Institute on current developments in civil practice in which I focus on the area of ethics and the law of lawyering presented as a part of the Civil Practice 2000/2001/2002/2003/ 2004/ 2005/ 2006/ 2007/2008/2009/2010/2011 and 2012 programs presented by the PBI in Marco Island, Florida,(2000-2001), Pittsburgh, Philadelphia, Harrisburg and telecast statewide annually for Pennsylvania lawyers by satellite network.

Materials -  Ethics Issues in Tax Practice - Presented to the Pa. Bar Association Tax Institute Program in Philadelphia, PA on November 18, 1999.

Materials - "Update on the Law of Ethics, 2001" accompanying lecture presented in Morgantown, WV on November 3, 2001, which program was presented by West Virginia Continuing Legal Education as a part of the Mountaineer CLE Series.

Materials - "The 360 Degree Duty of Lawyers in Litigation: Loyalty to the Client  vs. Candor to the Court and Fairness to the Opposition" - WVCLE Litigation Program of February 9, 2002, Canaan Valley Lodge, Davis, WV.

Materials - "Ethics For Criminal Defense Lawyers"  - Joint Annual Meeting of the PACDL and PDA of  PA, Camp Hill, PA, April 19, 2002.

Materials - "Ethical Issues Relating to Municipal Finance Practice -   Fees, Employment and Conflicts Issues"  - Program presented at the annual seminar of the Pa. Association of Bond Lawyers, Harrisburg, PA,   May 23, 2000.

Materials  - "Using the Lawyer-Expert in Financial Litigation" - Program presented at the Annual Meeting of the Business Law Section of the American Bar Association, Washington, D.C., August 11, 2002.

Materials - "Ethics Concerns in the Practice of Employment Law" - WVCLE Mountaineer CLE Series, Morgantown, WV, August 31, 2002.

Materials - "Ethics: Attorney Fees: Professional, Practical and Ethical Considerations" - WVCLE Mountaineer Series, Morgantown, WV August 31, 2002.

–    Materials  - "Ethics: Building a Bullet-Proof Ethics Screen In a Rule-Hostile Environment" - WVCLE Mountaineer CLE Series, Morgantown, WV, October 22, 2003.

–    Materials - "Ethics:  Do Your Clients Go Out the Window When Your Associates Go Out the Door?"  - WVCLE Mountaineer CLE Series, Morgantown, WV, October 22, 2003.

–    Materials  - "Survey of Ethics and Law of Lawyering"  - WVCLE Mountaineer CLE Series, Morgantown, WV, October 21, 2004.

–    Materials  - "Ethics in Representing Small Businesses"   - WVCLE Mountaineer CLE Series, Morgantown, WV, November 12, 2004.

-    Materials  - "There Ought to Be a Rule - Wait, Maybe There Is" - WVCLE Mountaineer CLE Series, Morgantown, WV, November 2, 2005.

Materials - "Ethics Update - Riding into the Sunset - With Dignity; Current Developments" -WVCLE Mountaineer Series, Morgantown, WV, November 8, 2007.

--      Materials - "Ethics Update" - WVCLE Series, Shepherdstown, WV, June 13, 2008.

-       Materials - "Ethics Update" and "Ethics Showdown" presentations - WVCLE Mountaineer Series, Morgantown, WV, October 23, 2008.

-       Materials - "Ethics Update" and "Ethics Challenge" - WVCLE Mountaineer Series, Morgantown, WV, October, 2009 and 2010.

-       Materials - "Malpractice and Ethics Complaint Avoidance", with Lonnie Simmons, Esq. - WVCLE, Morgantown, WV, Sept. 1, 2012

-       Materials - "Ethics and the Paralegal" - Ethics credit presentation October 13, 2012, Keystone Alliance of Paralegal Associations Annual Meeting, Lancaster, PA

-       Materials - "Fee Practices, Pointers and Traps" with Dana Pirone Carosella, Esq. and Barbara Rosenberg, Esq., PBI Webinar, December 6, 2012.

-       Materials -"Ethics Potpourri - What to Do When You Receive that "OMG" Letter" - With Dana Pirone Carosella, Esq. - Pa Bar Institute, programs in Philadelphia and Mechanicsburg, PA 2011; presented again on five occasions in 2012 as part of Ethics Potpourri Series.

-       Materials – "Defending an Ethics Complaint" – Lecture at PBA Real Property, Probate and Trust Retreat, May 14, 2014.

-       Statement filed with the Pennsylvania State Senate – Testimony as an expert at November 12, 2014 Senate hearing into the consequences of the loss of license of Attorney General Kane, particularly the provisions of Rule 217, Pa.Rules of Disciplinary Enforcement.

-       Materials – "Lights, Cameras, Action – Ethics Quandries Facing Family Lawyers" – PBI  - to Family Law Section Winter Meeting, Lancaster, PA , January 16, 2016, also presented  in Philadelphia, PA. , April 19, 2016.

-       Materials – "Professionalism" – Lecture, Dauphin County Bar Association, Harrisburg, PA , June 21, 2016.

-       Materials – With Erik Anderson, Esq. – "Criminal Charges and Convictions and Attorney Licensing and Discipline" – Lecture on Marijuana Update - Dauphin County Bar Association , November 16, 2016.

-       Materials –  with Christine Brann, Esq.  -Medical Marijuana Update, Lecture, Dauphin County Bar Association, Harrisburg, PA , January 10, 2017

-       Materials – "Can't We All Just Get Along?" – Lecture to Central Pa Collaborative Law Group,  Camp Hill, Pa. , November 21, 2017.

-8-

- Materials – "Ethics in the Deadly Encounter" with Atty. William Costopoulos - Dauphin County Bar Association CLE Seminar, May 22, 2018.

- Hot Tips Article - "Be Careful Using the Term 'Retainer' " – <u>PBA News</u>, July, 2018.

There are numerous other course materials which I authored or to which I contributed at times, or materials which I slightly updated or simply reused without alteration for many speaking engagements without creating new materials before this list was last updated and which I have simply forgotten and have not thus listed, but this list is representative. I present somewhere between five to ten ethics/malpractice avoidance CLE lectures in a typical year for the PBI and Dauphin County Bar alone.

Rev.   7 / 2018