# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMON CAMPBELL, and<br>PENNSYLVANIANS FOR UNION<br>REFORM,<br>        Plaintiffs,<br><br>        v.<br><br>PENNSYLVANIA SCHOOL BOARDS<br>ASSOCIATION,<br>MICHAEL FACCINETTO,<br>DAVID HUTCHINSON,<br>OTTO W. VOIT, III,<br>KATHY SWOPE,<br>LAWRENCE FEINBERG,<br>ERIC WOLFGANG,<br>DANIEL O'KEEFE,<br>DARRYL SCHAFER,<br>THOMAS KEREK, and<br>LYNN FOLTZ, in their individual<br>capacities,<br>        Defendants. | CIVIL ACTION<br><br><br><br><br>NO. 18-892 |

**DuBois, J.**                                                                                                                                       **December 20, 2018**

## **M E M O R A N D U M**

### I.    INTRODUCTION

Plaintiffs Simon Campbell and Pennsylvanians for Union Reform brought this action against defendant Pennsylvania School Boards Association, alleging retaliation for the exercise of their First Amendment rights. On August 23, 2018, the Court granted defendants' Motion for Summary Judgment and entered judgment in favor of defendants. Presently before the Court is defendants' Motion for the Imposition of Sanctions against Jacob C. Cohn, plaintiffs' counsel. For the foregoing reasons, the Court denies that part of the Motion seeking disqualification, reprimands Cohn for his conduct and grants the Motion to that effect, and grants that part of the

Motion seeking an award of attorneys' fees and costs.

## II. BACKGROUND[1]

Plaintiff Simon Campbell founded plaintiff Pennsylvanians for Union Reform, a non-profit advocacy group that opposes compulsory unions and promotes government transparency. Defendant Pennsylvania School Boards Association ("PSBA") is a non-profit association of public school entities and their school boards. The overwhelming majority of Pennsylvania public school districts are members of PSBA. The individual defendants in this case were the voting members of the PSBA Governing Board at all relevant times, who also served as school board directors for various school district members of PSBA. *See* Jt. Stip., ECF No. 50, ¶¶ 25–34.

In March 2017, plaintiffs sent a Right to Know Law ("RTKL") request to public school agencies in the state, seeking contact information for certain school district employees and public employee union representatives. In May 2017, Campbell sent a second RTKL request to approximately 600 PSBA government entity members. PSBA's attorneys emailed PSBA members, advising them to respond to some portions of plaintiffs' requests and not to others. Thereafter, plaintiffs obtained, and published on their websites, copies of these emails and an image of PSBA Executive Director, Nathan Mains, along with commentary criticizing PSBA. Michael Levin, who was serving as outside general counsel for PSBA, wrote to Campbell, asking him to remove the image of Mains.

Because of plaintiffs' conduct, the PSBA Board, composed of the individual defendants, voted unanimously to authorize a suit against plaintiffs. PSBA filed a suit in the Court of Common Pleas of Cumberland County, Pennsylvania, on June 17, 2017, asserting claims of

---

[1] In this Memorandum, the Court includes only those facts necessary to explain its decision. Unless otherwise cited, all facts are adopted from the Court's Memorandum granting defendants' Motion for Summary Judgment (ECF No. 75, filed Aug. 23, 2018).

defamation, tortious interference with contractual relations, and abuse of process. On February 28, 2018, plaintiffs filed suit in this Court, alleging that the state suit was filed in retaliation for plaintiffs' exercise of their First Amendment rights. On June 29, 2018, defendants filed a Motion for Summary Judgment (ECF No. 32). On July 20, 2018, defendants filed a Motion for the Imposition of Sanctions against plaintiffs' counsel, Jacob C. Cohn, for violations of the Pennsylvania Rules of Professional Conduct, which is presently before the Court. By Order dated August 23, 2018, the Court granted the Motion for Summary Judgment and entered judgment in favor of defendants (ECF No. 75). That Order reserved jurisdiction over the pending motion for sanctions. The Court now turns to that motion.

Defendants aver that plaintiffs' counsel, Cohn, violated several of the Pennsylvania Rules of Professional Conduct, through (1) emails to Michael Kristofco, counsel for three defendants, disparaging defense counsel; (2) emails to school district solicitors, disparaging defense counsel and threatening suit against the school districts; (3) deposition questions asserting defense counsel failed to communicate with defendants about service of process and settlements; and (4) deposition questions negatively portraying Bochetto & Lentz, PSBA's counsel in the state suit. *See* Defs. Mem. Supp. Mot. Sanctions 3; Defs. Reply Plts. Br. Disqual. 2.

### A. Emails to Kristofco[2]

Michael Kristofco was retained to represent defendants Otto W. Voit, III; Lynn Foltz; and Darryl Schafer during settlement discussions. Ex. D-174, at 3.[3] Kristofco emailed Cohn on April 12, 2018, to introduce himself and to schedule a phone call to discuss settlement. *Id.* Cohn

---

[2] During the hearing, plaintiffs objected to discussion of these emails, claiming they were not discussed in the motion. Sanctions Hearing Transcript ("Hearing"), ECF No. 93, at 156:8–14. Defendants responded that they did not receive these emails until after they filed the motion. *Id.* at 156:17–18; *see* Defs. Reply Disqual. 2. The Court overruled plaintiffs' objection. Hearing, at 157:13–14.

[3] Unless otherwise cited, all exhibits cited in this Memorandum were authenticated and admitted during the December 6, 2018, hearing.

3

requested that these discussions be kept confidential from defense counsel Michael Levin. Defs. Reply Disqual. 3.

From April 13 to May 11, 2018, Cohn and Kristofco exchanged emails in which Cohn criticized defense counsel. For example, Cohn told Kristofco that his clients should seek independent counsel, because Levin was conflicted. *See, e.g.*, Ex. D-175, at 1 (April 13); Ex. D-177, at 1 (April 26); Ex. D-178, at 1 (May 1); Ex. D-179, at 1 (May 3). Cohn asserted that defense counsel was prejudicing defendants through their representation. *See, e.g.*, Ex. D-177, at 1; Ex. D-179, at 1. In one email, Cohn stated, "Let me know of [sic] your clients are ready to get off Mike Levin's 'Crazy Train' yet. It's going off the rails." Ex. D-176, at 1 (April 20). In another, he averred that one defense attorney "had trouble wrapping his head around" one of Cohn's arguments. Ex. D-178, at 1. Finally, he asked Kristofco to consider whether his clients "would be better served by having an unconflicted counsel who has even the remotest idea of what they are talking about when it comes to constitutional law." Ex. D-180, at 1 (May 11).

After the depositions of several defendants, at which Cohn inquired about Kristofco's conduct, Cohn criticized Kristofco's lawyering, emailing him a portion of a deposition and telling him to send the transcript to his firm's professional responsibility partner "for appropriate handling and reporting." Ex. D-181, at 1–2 (June 5).

### B. Emails to School District Solicitors

From May 13 to June 23, 2018, Cohn sent a series of emails to the solicitors of the school districts for which the individual defendants were school board directors. *See* Exs. D-39 (May 13), D-40 (May 15), D-55 (May 16), D-57 (May 18), D-58 (May 29), D-59, D-60 (May 31), D-80 (June 23). In those emails, he argued that the school districts were jointly and severally liable to Campbell in damages as a result of the individual defendants' vote to authorize a suit against

4

Campbell. *See, e.g.*, Ex. D-39, at 2–3; Ex. D-40, at 1–2; Ex. D-57, at 1; Ex. D-58, at 1; Ex. D-59, at 1; Ex. D-60, at 1–2; Ex. D-80, at 1–2. Cohn also stated that until the school districts acted either to remove their respective directors from PSBA's Governing Board or to make PSBA dismiss the state suit, they were increasing their exposure for damages and attorneys' fees. *See, e.g.*, Ex. D-39, at 2–3; Ex. D-40, at 1–2; Ex. D-57, at 1; Ex. D-59, at 1; Ex. D-60, at 1; Ex. D-80, at 2. Cohn told the solicitors that districts who followed his instructions could "expect to be able to negotiate far better settlement terms" than those districts who did not act. *See* Ex. D-39, at 3.

In these emails, Cohn also disparaged the quality of defense counsel's representation. In one email, Cohn stated, "Like it or not, your clients are all passengers on board Mike Levin's and Nathan Mains's 'Crazy Train' . . . . . Now, we all know what happens to the 'Crazy Train' in Ozzy Osborne's song. It's 'going off the rails.'" Ex. D-40, at 1. Cohn encouraged the solicitors to evaluate "the advisability of permitting [Levin] to continue representing" defendants and stated Levin's "nonsensical filings and obstructionist discovery tactics" were increasing attorneys' fees and costs. *Id.* at 2. In an email to a solicitor, Cohn described Levin as providing "exceedingly bad advice" and asserted that he was "motivated by utter hatred of [Campbell]." Ex. D-59, at 3. In an email to another solicitor, Cohn described defense counsel Susan Wiener as "literally clueless." Ex. D-60, at 1.

Cohn did not copy defense counsel on any of these emails. Defs. Mem. Mot. 17. He also acknowledged that his emails to the school district solicitors were being forwarded to PSBA. *See* D-55, at 1. In response, he threatened that the school districts of those solicitors who forwarded the emails "will not be looked upon favorably in settlement discussions as a result of this breach of 'etiquette.'" *Id.*

5

### C. Deposition Questions about Defense Counsel

In his depositions of defendants Voit and Schafer, Cohn further criticized defense counsel. Cohn told Voit, "You might want to get your own independent counsel who does not have a conflict of interest with respect to the representation of PSBA." Ex. D-203, at 48:6–9.

Cohn questioned Schafer at his deposition about whether Levin communicated with him regarding service of process. For example, Cohn asked, "[W]hen PSBA's counsel, Michael Levin, informed me that he was authorized to accept service on your behalf, you had not, in fact, been told you had been sued, and had not, in fact, had an opportunity to give him that permission; is that correct?" Ex. D-204, at 80:24–81:6. Schafer replied that they had not discussed service. *Id.* at 82:24.

During depositions of both Voit and Schafer, Cohn asked whether they had discussed settlement with defense counsel. Deposing Voit, Cohn asked, "It was communicated to me that you . . . maintained your absolute refusal to permit the insurance company to pay money on your behalf to settle my client's claims against you and get you out of this lawsuit. . . . Is that accurate from your perspective?" Ex. D-203, at 47:3–10. Deposing Schafer, Cohn asked, "Was it your intention to prohibit an insurance company from paying money to settle your exposure in this lawsuit on your behalf?" to which Schafer replied, "No." Ex. D-204, at 88:17–21. Cohn went on to tell Schafer that Kristofco "has consistently told me that, consistent with Mike Levin's e-mail of March 27th[, 2018], you and Ms. Foltz and Mr. Voit, all affirmatively refuse to permit the insurance company to pay money to get you dismissed from this lawsuit." *Id.* at 96:21–97:3.

### D. Deposition Questions about Bochetto & Lentz

Cohn questioned defendants Michael Faccinetto and Kathy Swope about PSBA's counsel in the state suit, Bochetto & Lentz. Deposing Swope, Cohn referred to Bochetto & Lentz as

6

"extra nasty." Ex. D-206, at 119:9. He asked her, "[Y]ou're not aware of the legal decisions that talk about . . . [Bochetto & Lentz's] potentially unethical conduct, are you?" *Id.* at 119:17–20. When Cohn deposed Faccinetto, the following exchange took place:

> **[COHN] Q.** Do you know anything about Bochetto & Lentz's reputation for legal scholarship?
> **MR. [DAVID] BROWN [Defense Counsel]:** Objection.
> **THE WITNESS:** I do not, no.
> **Q.** Do you know anything about Bochetto & Lentz's reputation as bullies?
> **MR. BROWN:** Objection.
> **THE WITNESS:** I do not.
> **Q.** Anybody tell you what the judge's reaction was when it was mentioned that Bochetto & Lentz was counsel in the underlying action?
> **MR. BROWN:** Objection.
> **THE WITNESS:** I don't recall if they did.
> **Q.** Do you remember anybody telling you about the Christmas card that the judge recalled receiving one year from Bochetto & Lentz with an AK 47 on the front cover of it?
> **MR. BROWN:** Objection to relevance.
> **THE WITNESS:** Did not.
> **Q.** Was it the intention of PSBA in retaining Bochetto & Lentz to hire an aggressive law firm to really teach Simon Campbell a lesson?

Ex. D-205, at 154:9–155:16.

In their pending motion for sanctions, defendants argue that this behavior violates several of the Pennsylvania Rules of Professional Conduct and ask the Court to disqualify Cohn and his firm and/or award attorneys' fees and costs associated with their motion. Defs. Mem. Mot. 33. The motion is ripe for decision.

### III. APPLICABLE LAW

The United States District Court for the Eastern District of Pennsylvania has adopted and enforces Pennsylvania's Rules of Professional Conduct. *Belote v. Maritrans Operating Partners, LP*, No. 97-3993, 1998 WL 136523, at *2 (E.D. Pa. March 20, 1998); E.D. Pa. Local R. Civ. P. 83.6, Part IV(B).

Federal courts have "inherent authority" to "supervise the conduct of attorneys appearing

before them" and "impose sanctions upon those who would abuse the judicial process." *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994); *Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 671 (E.D. Pa. 2004). To exercise its "inherent power to sanction," the district court must find that the party who violated the Rule engaged in "bad faith conduct." *See Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Thus, in imposing sanctions, courts must tailor the sanction to appropriately address the harm identified. *Republic of Philippines*, 43 F.3d at 74. The sanction must also be "calibrated to the least severe level necessary to serve the deterrent purpose of the Rule." *Zuk v. Eastern Pa. Psychiatric Inst. of the Medical Coll. of Pa.*, 103 F.3d 294, 301 (3d Cir. 1996) (citations omitted).

## IV. DISCUSSION

Defendants argue Cohn violated five Rules of Professional Conduct: (1) making false statements under Rule 4.1, (2) communicating with a represented party under Rule 4.2, (3) obstructing access to evidence under Rule 3.4, (4) using means without any substantial purpose but to embarrass a third party under Rule 4.4, and (5) misconduct under Rule 8.4. The Court addresses each of these arguments in turn.

### A. Pennsylvania Rule of Professional Conduct 4.1

Under Rule 4.1, "In the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person." Pa. R.P.C. 4.1.

Defendants argue that Cohn violated Rule 4.1 through negative statements about Levin's

8

competence and conflicts of interest.[4] Sanctions Hearing Transcript ("Hearing"), ECF No. 93, at 171:14–20. The Court disagrees. Cohn's trial testimony and filings make clear that he genuinely believes Levin was incompetent and conflicted. Thus, although the manner in which Cohn presented his opinions was inappropriate, as the Court addresses below, his statements about Levin are opinions and do not constitute "false statement[s] of material fact or law" made "knowingly." These assertions do not warrant a Rule 4.1 violation.

Defendants further aver, in connection with no particular Rule, that Cohn intentionally falsely stated that Kristofco said that defendants Voit, Foltz, and Schafer "affirmatively refuse[d]" to settle. *See* Defs. Reply Disqual. 10–11; Ex. D-204, at 96:19–97:3. Indeed, Kristofco asserts, in an affidavit, that he never stated defendants were unwilling to settle and that settlement discussions failed only because "despite my asking several times, Mr. Cohn never provided a demand." Defs. Reply Disqual., Kristofco Aff., Ex. D-186, at ¶¶ 7–8. Cohn, however, argues that he and Kristofco discussed as fact, in various telephone conversations, a March 27, 2018, email from Levin, that stated, "Let me be clear—my clients have no interest in paying your clients anything. Please don't waste our time asking." Hearing, at 111:19–112:7; Cohn Decl., Ex. P, at 7. Even if Cohn was incorrect in doing so, the Court concludes he believed that Kristofco expressed his clients' refusal to settle and therefore did not "knowingly" make false statements about such a refusal in violation of Rule 4.1. To the extent defendants allege that these statements violate Rule 4.1, their argument fails.

### B. Pennsylvania Rule of Professional Conduct 4.2

Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about

---

[4] The extent of defendants' argument that Cohn violated Rule 4.1 is (1) a footnote in their Motion, stating that their expert argues Cohn violated Rule 4.1, and (2) their closing argument. Defs. Mem. Mot. 42 n.26; Hearing, at 171:14–20. Plaintiffs did not respond to this allegation. To the extent that defendants argue Cohn violated Rule 4.1, the Court disagrees for the reasons that follow.

the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Pa. R.P.C. 4.2. Lawyers cannot skirt Rule 4.2 requirements by communicating "through the acts of another." *Id.* cmt. 4. The Rule is meant to protect against "possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled [sic] disclosure of information relating to the representation." *Id.* cmt. 1.

Cohn sent a series of emails to the solicitors of the school districts in the PSBA, arguing that the individual defendants were subjecting the school districts to liability by supporting the state suit. *See, e.g.*, Exs. D-39, at 1. Cohn stated that the school districts would be exposed to potentially large damages unless they acted either to remove their directors from PSBA's Governing Board or to make PSBA dismiss the state suit. *See, e.g.*, *id.* at 3. Cohn did not copy defense counsel on any of these emails, and at least some of these emails were forwarded to individual defendants. *See* Defs. Mem. Mot. 17, 35; Ex. D-55, at 1.

Defendants argue that Cohn's emails, while addressed to the solicitors, were meant for the individual defendants and that Cohn knew, or should have known, the solicitors had a duty to transmit those emails to school boards of which the individual defendants were members. Defs. Mem. Mot. 34. Defendants aver that Cohn used these emails to improperly communicate to the individual defendants disparaging comments about their counsel and that they were exposing their school districts to damages. *Id.* Plaintiffs respond that Cohn emailed the school district solicitors, who are attorneys, not unrepresented clients, and that those solicitors represent the school districts, not the individual defendants. *See* Plts. Br. Opp. Mot. Sanctions 16, 34. Cohn argues that his emails were only meant for the solicitors and the school districts, to inform them

of their potential liability. *See id.* at 34. According to plaintiffs, the fact that solicitors forwarded Cohn's emails was neither Cohn's intention nor his fault—"[i]n no event did he expect that [the individual defendants] would receive the emails without being able to consult counsel." *Id.* at 16.

The question before the Court is whether Cohn knew, or should have known, his emails would be provided to the individual defendants. The Court concludes that he did. The solicitors had a duty to share the emails, which discussed their clients, the school districts', potential liability, with their clients. *See* Defs. Mem. Mot. 34 & n.24 (citing Pa. R.P.C. 1.4(a)(3), which requires attorneys to "keep the client reasonably informed about the status of the matter"); Def. Mot. Sanctions, Ex. D-70, at ¶¶ 20–21 (Freund decl.). Practically speaking, to communicate with school districts, solicitors have to reach out to the school boards, on which the individual defendants were the directors.[5] Moreover, even if Cohn did not know the solicitors had a duty to contact the school districts, for the school districts to do as Cohn asked and disavow the PSBA's conduct, required communicating with the school board member defendants. Regardless of whether Cohn only meant to warn the solicitors about the school districts' liability, it does not excuse his failure to inform defense counsel about his communications. Finally, Cohn's actions constitute a clear violation of the *purpose* of Rule 4.2: overreaching, interference with the client-lawyer relationship, and the uncounseled disclosure of information. *See* Pa. R.P.C. 4.2, cmt. 1.

Thus, the Court concludes that Cohn violated Rule 4.2. The Court further concludes that the obvious practical impact of Cohn's actions evinces bad faith conduct sufficient to justify the imposition of a sanction.

---

[5] Plaintiffs argue that the solicitors could have forwarded the emails to nonconflicted school board members. *See* Hearing, at 180:20–25. The question, however, is not whether the solicitors could have altered their actions to shield Cohn from liability, but rather whether Cohn knew, or should have known, that his emails were likely to reach the individual defendants in violation of Rule 4.2. Thus, this argument fails.

11

### C. Pennsylvania Rule of Professional Conduct 3.4

Under Rule 3.4, "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence . . . ." Pa. R.P.C. 3.4. Defendants argue that the "threats" of litigation against the school districts in Cohn's emails to solicitors may have prevented witnesses with "potentially valuable information" from coming forward. Defs. Mem. Mot. 37. In support, defendants claim that one potential witness declined to provide an affidavit or declaration "precisely because of the threats by Cohn." *Id.* at 37 n.25. However, in a conference on July 26, 2018, defendants admitted that the potential witness's testimony would have been cumulative. *See* July 26 Hearing Transcript ("July Hearing"), ECF No. 69, at 9:8–9. Defendants have been unable to show that they were unable to access any evidence due to Cohn's actions. Mere speculation about "potentially valuable information" they may have otherwise come across if not for Cohn's actions is insufficient. *See* Defs. Mem. Mot. 37. Thus, the Court concludes Cohn did not violate Rule 3.4.

### D. Pennsylvania Rule of Professional Conduct 4.4

Rule 4.4 states, "(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person . . . ." Pa. R.P.C. 4.4.

Defendants first argue that under *Sutch v. Roxborough Memorial Hospital*, Cohn's emails to the solicitors, which asserted that the school districts were liable for Campbell's damages, violate Rule 4.4.[6] *See* Defs. Mem. Mot. 38–40. In *Sutch*, an attorney sent letters to the General Counsel of the hospital that employed plaintiff's expert witness, asserting that the witness's testimony may expose the hospital to liability. 151 A.3d 241, 246 (Pa. Super. 2016). The attorney's associate sent multiple follow-up letters to the General Counsel, asking whether the

---

[6] The parties argue at length about whether Cohn's theory of the school district's liability is viable. The Court concludes, however, that such a determination is unnecessary in determining whether Cohn violated any Rules.

12

expert would be replaced. *Id.* at 256. The attorney argued that the letters were a "good faith effort to place a member of the medical community on notice of a potential problem." *Id.* The *Sutch* court disagreed, concluding that the "only purpose for [the] letters was to advance [the attorney's] goal of forcing [the expert] to change her testimony or refrain from testifying," and that had the attorney truly had good intentions, he would not have had his associate "follow up with four letters . . . demanding that the [recipient] identify a new expert." *Id.* at 257. Thus, the Pennsylvania Superior Court held that the letters violated Rule 4.4.

As in *Sutch*, plaintiffs in this case insist Cohn sent these emails in good faith. Plaintiffs argue Cohn intended to inform solicitors of their clients' potential liability, "to advance settlement discussions with their insurance carriers," and "ultimately, to secure a just and speedy resolution of the dispute." Plts. Br. Opp. Mot. 38, 44. While the Court trusts that Cohn genuinely believed the school districts were liable, his persistent emails crossed a line from a good faith effort to inform to a clear purpose to impact the case by getting PSBA to drop the state suit or having the individual defendants removed from the PSBA Governing Board. This behavior had no purpose but to "burden" in violation of Rule 4.4 and were sent in bad faith.

Second, defendants argue that Cohn violated Rule 4.4 through numerous statements, in depositions and emails, disparaging various attorneys. Defs. Mem. Mot. 41. His remarks included, among numerous others, characterizing Levin as driving a "Crazy Train," calling Wiener "literally clueless," and stating Bochetto & Lentz were "extra nasty counsel" and had a poor reputation for legal scholarship. *See* Ex. D-176, at 1; Ex. D-60, at 1; Ex. D-206, at 119:8–9; Ex. D-205, at 154:9–11.

Plaintiffs argue that Cohn's comments were not "gratuitously disparaging" and reflected his opinion of defendants' counsel's behavior and filings. Plts. Br. Opp. Mot. 40. For example,

13

Cohn argues it was necessary to assert that Levin was conflicted and trying to impede settlement, because he was obstructing a just resolution of the case. *See id.* at 39. Cohn states that his "Crazy Train" reference was intended as a "facetious" comment about what he perceived to be Levin's unjust tactics and was "a cultural reference to a song that others did not understand and was therefore viewed as offensive." *Id.* at 17–18, 40, 44. Regarding Cohn's comment that Wiener was "literally clueless," plaintiffs state that his assertion was "literally true," as she had just been assigned to the case, but "unwise." *Id.* at 18, 40, 44. With respect to his questions about Bochetto & Lentz, Cohn argues they were not merely meant to embarrass, but rather were relevant to an element of Campbell's claim: whether the state suit, particularly when filed by an aggressive law firm, would chill a person of ordinary firmness from exercising his First Amendment rights. *See, e.g.*, *id.* at 18–19, 30–32, 44. He further contends that his questions were a "fair description of what he had every reason to view as their well-known and intentional efforts to cultivate a public reputation as ruthlessly aggressive litigators." *Id.* at 44. Finally, plaintiffs argue Cohn's actions were overall the product of an "unusual" litigation environment created by defendants, in which they were hostile toward settlement and toward Campbell, among other things, and thus that "the contentiousness of this litigation actually called for Mr. Cohn to express matters in a more heated and vivid manner." *See id.* at 12–15, 52–53.

Cohn has expressed his remorse for making such statements, but his repentance is insufficient to avoid liability. *See, e.g.*, Plts. Surreply Mem. Opp. Defs. Mot. 12–13. His remarks go beyond one or two statements made in poor taste and extend to numerous instances of impermissible, unprofessional communications. Because Cohn could not have had a good faith reason for communicating in such a manner other than to "embarrass" and "burden" opposing counsel, the Court concludes that Cohn acted with subjective bad faith and violated

14

Rule 4.4.

### E. Pennsylvania Rule of Professional Conduct 8.4

Finally, defendants argue that Cohn violated Rule 8.4. Defs. Mem. Mot. 42–43. Under Rule 8.4, "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct . . . [or] (d) engage in conduct that is prejudicial to the administration of justice." Pa. R.P.C. 8.4. Because Cohn violated several Rules, as discussed above, the Court concludes that he also violated Rule 8.4.

### F. Sanctions

Having concluded that Cohn violated the Rules of Professional Conduct, with bad faith, the Court turns to whether the sanctions that defendants request are appropriate. Defendants seek two sanctions: (1) disqualification of Cohn and his firm and/or (2) the attorneys' fees and costs associated with filing and litigating their motion for sanctions. Defs. Mem. Mot. 32.

#### a. Disqualification[7]

Disqualification is an "extreme sanction" and "should not be imposed lightly." *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999). The movant bears the burden of establishing that "continuing representation would be impermissible." *Id.* (citation omitted). Some courts have expressed that "motions to disqualify opposing counsel generally are not favored." *See, e.g.*, *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992) (citation omitted).

In determining whether disqualification is warranted, courts have considered a variety of factors, including "the client's right to be represented by the counsel of his choice," "the

---

[7] Plaintiffs argue that Cohn should not be disqualified, because defendants delayed filing their motion to gain a "tactical advantage." Plts. Br. Opp. Disqual. 6–7. Defendants respond that they timely filed their motion after they obtained an expert report assessing their claims. Defs. Reply Disqual. 17–18. The Court concludes that there is insufficient evidence to show that defendants filed the motion merely to gain a tactical advantage.

opposing party's right to prepare and try its case without prejudice," *EEOC v. Hora, Inc.*, 239 F. App'x 728, 731 (3d Cir. 2007) (citation omitted), allowing attorneys "to practice without excessive restrictions," *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980), and maintaining the "integrity of the legal profession," *Dombrowski v. Gov. Mifflin Sch. Dist.*, No. 11-1278, 2011 WL 1884019, at *2 (E.D. Pa. May 16, 2011). In addition, disqualification should be imposed only if it is an appropriate means of enforcing the relevant Rule of Professional Conduct, given the ends the Rule is designed to serve. *See Miller*, 624 F.2d at 1201. Further, Pennsylvania courts assess whether disqualification is necessary to ensure "the parties receive the fair trial which due process requires." *See, e.g.*, *In re Estate of Pedrick*, 482 A.2d 215, 221 (Pa. 1984).

Defendants aver that disqualification is necessary due to the repeated nature of Cohn's conduct. Defs. Reply Disqual. 21–22. Indeed, the Court reiterates the seriousness of Cohn's actions and emphasizes that this type of unprofessional behavior tarnishes the "integrity of the legal profession" and, at its worst, can deny the parties "the fair trial which due process requires." Still, disqualification is an "extreme sanction." Campbell has expressed his desire to retain Cohn as his lead counsel. *See* Hearing, at 126:14–127:6, 128:7–129:6. Moreover, defendants have been unable to articulate any prejudice resulting from Cohn's behavior. On this issue, defendants argue that Cohn's emails prevented at least one potential witness from producing an affidavit but admit that the affidavit would have been cumulative. *See* Defs. Reply Disqual. 22–23; July Hearing, at 9:8–9; Hearing, at 144:17–21. They also contend they cannot know what evidence they could have acquired if not for Cohn's comments but are unable to provide any examples of evidentiary avenues they were unable to pursue. *See* Defs. Reply Disqual. 22–23. Levin argues the comments about his competence may negatively impact his

16

relationship with his clients, who might now be questioning the value of his advice, but admits he has not lost any clients, nor felt any negative impact on his practice. July Hearing, at 10:1–5, 12:10–17, 12:24–25. Thus, defendants have failed to show prejudice or that Cohn has prevented the parties from having a fair trial. For these reasons, the Court concludes that disqualifying Cohn would be inappropriate. *See EEOC v. Hora*, 239 F. App'x at 731–32 (concluding a district court abused its discretion in imposing disqualification without explaining how defendants were prejudiced). That portion of defendants' Motion requesting disqualification as a sanction is denied.

### b. *Reprimand*

Having rejected defendants' claim that Cohn and his firm should be disqualified, the Court addresses the question of whether any other type of sanction should be imposed. The Court concludes that Cohn's conduct, repeated over a period of several months, warrants formal reprimand. *See Bowers v. NCAA*, 475 F.3d 524, 543 (3d Cir. 2007) ("[C]ourts are in near complete agreement that an order rising to the level of a public reprimand is a sanction."); *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1998). The reprimand in this case is particularly appropriate in view of Cohn's continuing violations of Rules 4.2 and 4.4. This Memorandum constitutes such a reprimand.

### c. *Attorneys' Fees and Costs*

The imposition of attorneys' fees and costs as a sanction "should be guided by equitable considerations" and reflect the "minimum that will serve to adequately deter the behavior." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194–95 (3d Cir. 1988). The Court concludes that, given the number of unprofessional communications by Cohn, reprimand and an award of defendants attorneys' fees and costs is the "minimum that will serve to

adequately deter" Cohn. That part of defendants' motion seeking attorneys' fees and costs is therefore granted. [8]

In a joint report filed with the Court on December 12, 2018, plaintiffs stated that $5,000 would be an appropriate counsel fee. Defendants argued that $15,000 in counsel fees and $6,000 to cover the fee of their expert should be awarded.

After reviewing defendants' submissions, the Court concludes that a reasonable counsel fee is $10,000. The Court does not deem it necessary for defendants to submit time sheets covering their work on the motion. With respect to the charge for their expert, the Court questions whether retaining an expert was necessary. Nevertheless, the Court orders a reimbursement of $3,000, representing one half of the fee of the expert, for a total award of $13,000.

V. CONCLUSION

For the foregoing reasons, the Court denies that part of defendants' Motion for the Imposition of Sanctions seeking disqualification of Cohn and his firm, reprimands Cohn for his conduct and grants the motion to that effect, and grants that part of the Motion seeking an award of attorneys' fees and costs. An appropriate Order follows.

---

[8] Plaintiffs argue that, under *Moeck v. Pleasant Valley Sch. Dist.*, the movant is required to take steps to resolve issues of sanctionable conduct before filing a motion for sanctions. Plts. Br. Opp. Mot. 3–4, 51–52 (citing 844 F.3d 387, 392 n.9 (3d Cir. 2016)). They contend that had defendants told Cohn that they found his behavior inappropriate, he would have stopped the challenged conduct. *Id.* at 19–20. According to plaintiffs, because defendants failed to take this step, they are not entitled to attorney's fees and costs. *Id.* at 52. Plaintiffs, however, misinterpret *Moeck*, which states that motions for sanctions should "conserve rather than misuse judicial resources." *See* 844 F.3d at 392 n.9. This language hardly imposes a requirement that the parties try to resolve issues of sanctionable conduct before filing a motion for sanctions.